**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.   17-80013-CR-MIDDLEBROOKS/BRANNON**

**UNITED STATES OF AMERICA**

**v.**

**KENNETH CHATMAN, et al.,**

**Defendants.**
_____/

## UNOPPOSED MOTION FOR PERMISSION TO DISPLAY SUBSTANCE ABUSE TREATMENT RECORDS TO COUNSEL FOR DEFENDANTS

The United States of America, by and through the undersigned Assistant United States Attorney, hereby moves this Court for an Order allowing the United States to display confidential substance abuse treatment records to counsel for the defendants at a discovery conference scheduled for Monday, February 6, 2017.   The confidential records would not be provided to counsel for the defendants until a proper protective order is in place.   In support of its motion, the government states:

1.      The seven defendants have been charged with conspiracy to commit health care fraud in connection with the submission of claims to private insurance companies for reimbursements for substance abuse treatment and bodily fluid testing purportedly in support of that substance abuse treatment.   Six of the defendants have also been charged with other offenses, including making false statements in connection with health care matters, money laundering, sex trafficking, and maintaining a drug-involved premises.

2.      Title 42, United States Code, Section 290dd-2 and Chapter 42, Code of Regulations, Sections 2.1, *et seq.*, impose strict limitations on the collection, use, and disclosure of records of the identity, diagnosis, prognosis, and treatment of patients that were maintained in

connection with a substance abuse prevention, treatment, and rehabilitation program. Law enforcement cannot collect or use such records to investigate treatment programs and others without court permission, and the permission is separate from the subpoena or search warrant necessary to compel production of the records.

3.      In August 2016, the United States Attorney's Office applied for and received permission to collect and use confidential treatment records to investigate Reflections Treatment Center and its employees and agents, including the defendants in this case.  (*See* Attachment A.) When some of the defendants opened a second substance abuse treatment facility, Journey to Recovery, the United States Attorney's Office moved to amend the initial Order to include Journey to Recovery.  (*See* Attachment B.)

4.      Due to the covert nature of the grand jury's investigation into the actions of the defendants and others, the Court sealed the United States' Applications and the Court's Orders and granted the Applications without prior notice to the patients whose records would be collected. The Court's Orders provided, in accordance with 42 C.F.R. § 2.66, that, following the return of an indictment, arrest of the defendants, and the issuance of the standing discovery order, the government was required to notify those patients (and the defendants) of the existence of the Orders and allow them to file objections.

5.      On January 31, 2017, the Court ordered the Applications and Orders unsealed.

6.      All of the defendants have been arraigned and standing discovery orders have been issued.  Pursuant to the standing discovery order and the local rules, discovery is due to be produced on February 8, 2017.

7.      On today's date, the government began issuing notification letters to the patients of

the treatment facilities.   More than 1700 patients will be notified over the next few days.   A copy of the notification letter is attached hereto as Attachment C.   The letter advises patients who have objections to file those objections not later than February 15, 2017.

8.      In accordance with the statute, regulations, and the Order authorizing the collection, disclosure, and use of the confidential substance abuse treatment records, copies of the confidential information cannot be provided to counsel for the defendants until an appropriate protective order is in place.   Furthermore, the patients should be given time to file any objections before the government can apply for any protective order.

9.      In light of the pending discovery deadline and the defendants' interest in the prompt receipt of discovery, the undersigned has scheduled a discovery conference to occur on Monday, February 6, 2017, at the offices of the Federal Bureau of Investigation.  By this motion, the government seeks permission to make all of the collected evidence available for inspection by counsel for the defendants – and any defendants who elect to attend.   The disclosure Order that is currently in place provides specific limitations on when and how members of the investigative team can show the collected documents to third parties.   Members of the investigative team are allowed to show collected records to individuals and their counsel during interviews and proffers, but those individuals and counsel cannot keep copies of the records.   (*See* Attachment B).

10.     In keeping with the language and spirit of the disclosure Order, the statute, and the applicable regulations, and balancing the interests of the defendants in have access to the discovery, the United States respectfully requests that the Court allow members of the investigative team to display the confidential substance abuse treatment records to the defendants and their counsel, and allow those defendants and counsel to inspect those records at the discovery

conference on February 6, 2017.   The United States respectfully requests that the Court's Order limit defendants and their counsel to inspection of the records, that is, the Order should specify that copies of the records cannot be provided to counsel until a Protective Order is in place following consideration of any objections filed by patients.

11.     To assist in the prompt disclosure of the records after a Protective Order is put in place, counsel for the defendants have been asked to provide the government with encrypted 1 Terabyte hard drives at the discovery conference.

12.     The undersigned has conferred with counsel for the defendants who have expressed that they have no objection to the granting of this motion.

Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY


By:     s/*A. Marie Villafana*
A. MARIE VILLAFAÑA
Assistant United States Attorney
Florida Bar No. 0018255
500 South Australian Avenue, Suite 400
West Palm Beach, FL 33401
Telephone: 561 820-8711
Facsimile: 561 820-8777
ann.marie.c.villafana@usdoj.gov


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 1, 2017, I served and electronically filed the foregoing document and all attachments with the Clerk of the Court using CM/ECF.

s/*A. Marie Villafaña*
A. MARIE VILLAFAÑA
Assistant United States Attorney

4

# ATTACHMENT A

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. _____ **16-8280-DLB** _____

IN RE:

**APPLICATION FOR ORDER TO COLLECT,
DISCLOSE, AND USE MEDICAL RECORDS TO
INVESTIGATE REFLECTIONS TREATMENT
CENTER, INC., AND ITS EMPLOYEES AND
AGENTS**

_____ /

FILED by _____ D.C.

AUG - 3 2016

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

### SEALED ORDER

THIS MATTER has come before the Court upon the Application Under Seal filed by the United States of America, for an Order pursuant to 42 U.S.C. § 290dd-2 and 42 C.F.R. §§ 2.64 and 2.66 authorizing the collection, disclosure, and use of patient treatment records, including any confidential communications contained therein, to criminally investigate employees and agents of a federally regulated and/or supported substance abuse treatment program, specifically:

**REFLECTIONS TREATMENT CENTER, INC.**

The Court finds that the Applicant has shown good cause for the issuance of the Order, specifically that there is cause to believe that employees or agents of the program are engaged in criminal misconduct that is extremely serious, other ways of obtaining evidence of this criminal activity are not available or would not be effective, and the public interest and need for the collection, disclosure, and use of these records outweigh the potential injury to patients of the programs, physician-patient relationships, and the treatment services.

The Court further finds and orders as follows:

1.      The investigation being conducted by the investigative team, which is defined to include agents, employees, and task force officers of the Federal Bureau of Investigation, agents and employees of the Internal Revenue Service, Department of Labor, Amtrak Office of Inspector General, Office of Personnel Management Office of Inspector General, prosecutors from the U.S. Attorney's Office, U.S. Department of Justice, and State Attorney's Office for the 15th Judicial Circuit of Florida ("SAO"), and members of the SAO Sober Home Task Force, is within the lawful jurisdiction of the government authority seeking access to the records, as provided in 42 C.F.R. § 2.66(a)(1).

2.      There is reason to believe that the records sought are relevant to a legitimate law enforcement inquiry.

3.      The application and order do not refer to any patient by name and do not contain or otherwise disclose any patient identifying information, as provided in 42 C.F.R. § 2.66(a)(2).

4.      Good cause exists for this Order in that: (a) there are no other effective ways of obtaining the information sought, as provided in 42 C.F.R. § 2.64(d)(1); and, (b) the public interest and need for disclosure of the records outweigh the potential injury to the patient/client, the physician-patient relationship, and to the treatment services, as provided in 42 C.F.R. § 2.64(d)(2).

5.      The criminal activity alleged to have been committed includes "extremely serious crimes," as provided in 42 C.F.R. § 2.63(a)(2), due to the extreme vulnerability of the patient population as evidenced by lethal and non-lethal overdoses by patients of the facility, and allegations of rape and forced prostitution of clients of the program.

6.      The investigative team properly may collect patient treatment records through legal process, and may use and disclose all such records during its investigation and prosecution,

2

including any confidential communications contained therein, pursuant to the terms set forth below.

7.      As provided in 42 C.F.R. § 2.64(e)(1), disclosure shall be limited to parts of the patient/client records regarding (1) prescriptions for drug testing; (2) claims data, billing information, and payments for reimbursement for drug testing; (3) how results of drug testing were or were not used in directing the patient's treatment; (4) insurance claims and reimbursements, to include all documentation and information on which REFLECTIONS relied to support its requests for insurance reimbursements, including documentation to establish that billed services were rendered and medically necessary; (5) payments made to or received from patients, sober home residents, sober home owners, and/or owners of other drug treatment facilities; (6) how patients paid for services at RELECTIONS, including any documentation of payments "in kind" or through services that could include prostitution; (7) special investigations unit ("SIU") documentation and audit information; and (8) patient relapses, overdoses, or calls for emergency or police services at REFLECTIONS.  If other information has been or, in the future, is voluntarily disclosed to the investigative team, they may retain it subject to the protections set forth herein.

8.      As provided in 42 C.F.R. § 2.64(e)(2), access to the records shall be limited to members of the investigative team, including agents, analysts, auditors, experts and consultants, and to consultants, auditors or experts who may be retained to evaluate the evidence for purposes of trial; to members of the grand jury; and to persons interviewed during the course of the investigation and witnesses who may be called to testify at administrative or judicial hearings to the extent the information in the records may be relevant to their testimony.  This paragraph authorizes members of the investigative team to show the records to individuals and their counsel

3

during interviews and proffers, but those individuals and counsel cannot keep copies of the records.

9.      As provided in 42 C.F.R. § 2.66(d)(1), the investigative team shall redact all client identification information (as defined by 42 C.F.R. § 2.11), if records are disclosed to individuals not authorized under the order to view such information (except that they may be disclosed to the court in camera should the court need it in furthering the disposition of the case).

10.     Prior to the disclosure of such patient identifying information in a court proceeding, the U.S. Attorney's Office shall file an appropriate motion to seal that information from public scrutiny pursuant to 42 C.F.R. § 2.67(d)(4).   If the U.S. Attorney's Office needs to disclose as discovery any information collected pursuant to this Order, it shall apply for and obtain a Protective Order.

11.     As provided in 42 C.F.R. §§ 2.66(c), (d)(1) and 2.64(e)(3), the investigative team shall refrain from using any information obtained pursuant to this Order to conduct any investigation or prosecution of a patient/client, or as the basis for an application for an order under 42 C.F.R. § 2.65.

12.     As provided in 42 C.F.R. § 2.66(b), notice of the Application and this Order are not required at this time.   After the grand jury returns an indictment, the targets of the investigation are arrested, and discovery is ordered produced, the U.S. Attorney's Office shall produce its Application and the Court's Order to the charged individuals, and to the persons and entities from whom the records were obtained to allow them an opportunity to seek revocation or amendment of the Order as provided in § 2.66(b).   The U.S. Attorney's Office also shall send a letter to all patients identified in the patient treatment records at the address shown in the records.   The letter shall inform the patients of the Court's Order and their ability to seek revocation or amendment of

4

this Order appropriately limited to the presentation of evidence on the statutory and regulatory criteria for the issuance of the Order as provided in § 2.66(b).

13.    The Application and this Court's Order shall be SEALED until further Order of this Court, except that:

a.    copies shall be provided to the U.S. Attorney's Office and law enforcement as necessary to the performance of their official duties; and

b.    pursuant to 42 C.F.R. § 2.61(a), a copy of this Order may be served alongside legal process (e.g., grand jury subpoena, search warrant, FBI Request for Information) to obtain patient treatment records as authorized herein. Any person or entity provided with a copy of this Order shall be informed that this Order is Sealed and may not be further disclosed without permission of the Court.

DONE AND ORDERED in Chambers at West Palm Beach, Florida, this ___3rd___ day of August, 2016.

_____
DAVE LEE BRANNON
UNITED STATES MAGISTRATE JUDGE

Copy furnished:

A. Marie Villafaña, AUSA
Joshua Hawkins, FBI

Certified to be a true and correct copy of the document on file
Steven M. Larimore, Clerk,
U.S. District Court
Southern District of Florida
By _____ Deputy Clerk
Date 8-3-16

5

# ATTACHMENT B

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. _____ **16-8280-DLB** _____

IN RE:

**APPLICATION FOR ORDER TO COLLECT,
DISCLOSE, AND USE MEDICAL RECORDS TO
INVESTIGATE REFLECTIONS TREATMENT
CENTER, INC., AND ITS EMPLOYEES AND
AGENTS**

_____ /

FILED BY ____ꟼ____ D.C.

NOV 0 8 2016

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

### AMENDED SEALED ORDER

THIS MATTER has come before the Court upon the United States of America's Motion

to Amend the Sealed Order entered pursuant to 42 U.S.C. § 290dd-2 and 42 C.F.R. §§ 2.64 and

2.66 authorizing the collection, disclosure, and use of patient treatment records, including any

confidential communications contained therein, to criminally investigate employees and agents of

a federally regulated and/or supported substance abuse treatment program, specifically to expand

its investigation to the entity known as "Journey to Recovery" located at 7451 South Military Trail,

Lake Worth, Florida, and any treatment centers later identified as owned or operated by Kenny

Chatman, Laura Chatman, Reflections Treatment Center, Inc., or Stay'n Alive, Inc.

Accordingly, having found good cause, it is hereby ORDERED AND ADJUDGED that

the Court's Order of August 3, 2016, is amended.  The Court hereby grants authorization,

pursuant to 42 U.S.C. § 290dd-2 and 42 C.F.R. §§ 2.64 and 2.66 to collect, disclose, and use patient

treatment records, including any confidential communication contained therein, to criminal

investigated employees and agents of a federally regulated and/or supported substance abuse

treatment programs, specifically:

**REFLECTIONS TREATMENT CENTER, INC., JOURNEY TO RECOVERY, AND ANY TREATMENT CENTERS LATER IDENTIFIED AS OWNED OR OPERATED BY KENNY CHATMAN, LAURA CHATMAN, REFLECTIONS TREATMENT CENTER, INC., OR STAY'N ALIVE, INC. (hereinafter referred to as the "Treatment Centers")**

The Court finds that the Applicant has shown good cause for the issuance of the Amended Order, specifically that there is cause to believe that employees or agents of the programs are engaged in criminal misconduct that is extremely serious, other ways of obtaining evidence of this criminal activity are not available or would not be effective, and the public interest and need for the collection, disclosure, and use of these records outweigh the potential injury to patients of the programs, physician-patient relationships, and the treatment services.

The Court further finds and orders as follows:

1.      The investigation being conducted by the investigative team, which is defined to include agents, employees, and task force officers of the Federal Bureau of Investigation, agents and employees of the Internal Revenue Service, Department of Labor, Amtrak Office of Inspector General, Office of Personnel Management Office of Inspector General, prosecutors from the U.S. Attorney's Office, U.S. Department of Justice, and State Attorney's Office for the 15th Judicial Circuit of Florida ("SAO"), and members of the SAO Sober Home Task Force, is within the lawful jurisdiction of the government authority seeking access to the records, as provided in 42 C.F.R. § 2.66(a)(1).

2.      There is reason to believe that the records sought are relevant to a legitimate law enforcement inquiry.

3.      The application and order do not refer to any patient by name and do not contain or otherwise disclose any patient identifying information, as provided in 42 C.F.R. § 2.66(a)(2).

4.      Good cause exists for this Order in that: (a) there are no other effective ways of obtaining the information sought, as provided in 42 C.F.R. § 2.64(d)(1); and, (b) the public interest and need for disclosure of the records outweigh the potential injury to the patient/client, the physician-patient relationship, and to the treatment services, as provided in 42 C.F.R. § 2.64(d)(2).

5.      The criminal activity alleged to have been committed includes "extremely serious crimes," as provided in 42 C.F.R. § 2.63(a)(2), due to the extreme vulnerability of the patient population as evidenced by lethal and non-lethal overdoses by patients of the facility, and allegations of rape and forced prostitution of clients of the program.

6.      The investigative team properly may collect patient treatment records through legal process, and may use and disclose all such records during its investigation and prosecution, including any confidential communications contained therein, pursuant to the terms set forth below.

7.      As provided in 42 C.F.R. § 2.64(e)(1), disclosure shall be limited to parts of the patient/client records regarding (1) prescriptions for drug testing; (2) claims data, billing information, and payments for reimbursement for drug testing; (3) how results of drug testing were or were not used in directing the patient's treatment; (4) insurance claims and reimbursements, to include all documentation and information on which the Treatment Centers relied to support their requests for insurance reimbursements, including documentation to establish that billed services were rendered and medically necessary; (5) payments made to or received from patients, sober home residents, sober home owners, and/or owners of other drug treatment facilities; (6) how

3

patients paid for services at the Treatment Centers, including any documentation of payments "in kind" or through services that could include prostitution; (7) special investigations unit ("SIU") documentation and audit information; and (8) patient relapses, overdoses, or calls for emergency or police services at the Treatment Centers.  If other information has been or, in the future, is voluntarily disclosed to the investigative team, they may retain it subject to the protections set forth herein.

8.      As provided in 42 C.F.R. § 2.64(e)(2), access to the records shall be limited to members of the investigative team, including agents, analysts, auditors, experts and consultants, and to consultants, auditors or experts who may be retained to evaluate the evidence for purposes of trial; to members of the grand jury; and to persons interviewed during the course of the investigation and witnesses who may be called to testify at administrative or judicial hearings to the extent the information in the records may be relevant to their testimony.  This paragraph authorizes members of the investigative team to show the records to individuals and their counsel during interviews and proffers, but those individuals and counsel cannot keep copies of the records.

9.      As provided in 42 C.F.R. § 2.66(d)(1), the investigative team shall redact all client identification information (as defined by 42 C.F.R. § 2.11), if records are disclosed to individuals not authorized under the order to view such information (except that they may be disclosed to the court in camera should the court need it in furthering the disposition of the case).

10.     Prior to the disclosure of such patient identifying information in a court proceeding, the U.S. Attorney's Office shall file an appropriate motion to seal that information from public scrutiny pursuant to 42 C.F.R. § 2.67(d)(4).  If the U.S. Attorney's Office needs to disclose as

discovery any information collected pursuant to this Order, it shall apply for and obtain a Protective Order.

11.     As provided in 42 C.F.R. §§ 2.66(c), (d)(1) and 2.64(e)(3), the investigative team shall refrain from using any information obtained pursuant to this Order to conduct any investigation or prosecution of a patient/client, or as the basis for an application for an order under 42 C.F.R. § 2.65.

12.     As provided in 42 C.F.R. § 2.66(b), notice of the Application, the Motion to Amend, and the Court's Orders are not required at this time.   After the grand jury returns an indictment, the targets of the investigation are arrested, and discovery is ordered produced, the U.S. Attorney's Office shall produce its Application and the Court's Order to the charged individuals, and to the persons and entities from whom the records were obtained to allow them an opportunity to seek revocation or amendment of the Order as provided in § 2.66(b).   The U.S. Attorney's Office also shall send a letter to all patients identified in the patient treatment records at the address shown in the records.   The letter shall inform the patients of the Court's Order and their ability to seek revocation or amendment of this Order appropriately limited to the presentation of evidence on the statutory and regulatory criteria for the issuance of the Order as provided in § 2.66(b).

13.     The Motion to Amend, including all attachments, and this Court's Order shall be SEALED until further Order of this Court, except that:

> a.  copies shall be provided to the U.S. Attorney's Office and law enforcement as necessary to the performance of their official duties; and
>
> b.  pursuant to 42 C.F.R. § 2.61(a), a copy of this Order may be served alongside legal process (e.g., grand jury subpoena, search warrant, FBI Request for

Information) to obtain patient treatment records as authorized herein.   Any

person or entity provided with a copy of this Order shall be informed that this

Order is Sealed and may not be further disclosed without permission of the

Court.

DONE AND ORDERED in Chambers at West Palm Beach, Florida, this _8_th_ day of

November, 2016.

DAVE LEE BRANNON
UNITED STATES MAGISTRATE JUDGE

Copy furnished:

A. Marie Villafaña, AUSA
William Stewart, FBI

6

Certified to be a true and
correct copy of the document on file
Steven M. Larimore, Clerk,
U.S. District Court,
Southern District of Florida
By _____
Deputy Clerk
Date _11_8_16_

# ATTACHMENT C



**U.S. Department of Justice**

*United States Attorney*
*Southern District of Florida*

*500 S. Australian Ave, Ste 400*
*West Palm Beach, FL 33401*

February 1, 2017

Re:   Investigation of Reflections Treatment Center, Journey to Recovery, Kenneth
      Chatman, and Related Entities

Dear Sir or Madam:

I write to notify you that medical and insurance records concerning your treatment at Reflections Treatment Center and/or Journey to Recovery have been collected as part of a criminal investigation.  Prior to collecting those records, in accordance with federal law, an Order was obtained from a federal judge, United States Magistrate Judge Dave Lee Brannon. Judge Brannon's Order directed the members of the investigative team to maintain the records in strict confidence and forbade the investigative team from using the records to investigate or prosecute any patient.  Copies of the applications and orders are enclosed herewith.

Judge Brannon's Order provided that, if the investigation led to criminal charges against employees or agents of a substance abuse treatment program, then notice needed to be provided to the patients prior to producing discovery to the defendants in the case.  As of today's date, seven people have been indicted by a federal grand jury with conspiracy to commit health care fraud and other offenses.  Please note that an indictment is merely an allegation and that all charged individuals are presumed innocent unless and until proven guilty beyond a reasonable doubt in a court of law.

Judge Brannon's Order further provided that, prior to the production of discovery, a Protective Order would have to be in place that would restrict the dissemination of private patient records.  Before this occurs, you are allowed to file a motion with the Court seeking revocation or amendment of Judge Brannon's Order.  Under Title 42 of the United States Code and Chapter 42 of the Code of Federal Regulations, any such motion must be limited to the presentation of evidence on the statutory and regulatory criteria for the issuance of Judge Brannon's Order.

If you wish to file a motion, please send it to the Clerk's Office, United States District for the Southern District of Florida, 701 Clematis Street, West Palm Beach, Florida 33401.  Please also send a copy to me so that I can insure that it is properly filed with the Court.  My address is:

500 S. Australian Avenue, Suite 400, West Palm Beach, FL 33401.

Any motion should bear the following Caption at the top of the first page:

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

COURT FILE NO.   16-8280-DLB

IN RE:

APPLICATION FOR ORDER TO COLLECT,
DISCLOSE, AND USE MEDICAL RECORDS TO
INVESTIGATE REFLECTIONS TREATMENT
CENTER, INC., AND ITS EMPLOYEES AND
AGENTS
_____/

MOTION TO REVOKE OR AMEND TITLE 42 DISCLOSURE ORDER

**If you wish to file a motion, you must do so not later than Wednesday, February 15, 2017.**

Please note that, regardless of whether you seek to revoke or amend Judge Brannon's Order, the U.S. Attorney's Office will file a Motion for Protective Order asking the Court to order counsel for the defendants to maintain your medical records in strictest confidence.

If you have any questions, or if you wish to receive notifications regarding the status of the criminal case, please contact FBI Victim-Witness Specialist Twiler Smith at Twiler.Smith@ic.fbi.gov or by calling 561-822-5114.

Sincerely,

Wifredo A. Ferrer
United States Attorney

By:    s/ *A. Marie Villafaña*
       A. Marie Villafaña
       Assistant United States Attorney

Enclosures
cc:    Ms. Twiler Smith, FBI (with enclosures)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-8280-DLB

IN RE:

APPLICATION FOR ORDER TO COLLECT,
DISCLOSE, AND USE MEDICAL RECORDS
TO INVESTIGATE REFLECTIONS
TREATMENT CENTER, INC., AND ITS
EMPLOYEES AND AGENTS



FILED BY _____ 4M___ D.C.

NOV 0 8 2016

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

_____/

MOTION TO AMEND

Applicant United States of America, by and through the undersigned Assistant United States Attorney, hereby files its Motion to Amend the Court's Sealed Order, entered on August 3, 2016, authorizing, pursuant to 42 U.S.C. § 290dd-2 and 42 C.F.R. §§ 2.64 and 2.66, the collection, disclosure, and use of patient treatment records, including any confidential communications contained therein, to criminally investigate employees and agents of a federally regulated and/or supported substance abuse treatment program, specifically, Reflections Treatment Center, Inc. ("Reflections").

For the reasons set forth below and in the attached Affidavit of Special Agent William Stewart, the United States respectfully requests that the Court amend its Sealed Order to allow the investigative team to expand its investigation to allow the collection, disclosure, and use of similar patient treatment records to criminally investigate employees and agents of **Journey to Recovery, located at 7451 South Military Trail, Lake Worth, Florida, and any treatment centers later identified as owned or operated by Kenny Chatman, Laura Chatman, Reflections Treatment Center, Inc.**

CONCLUSION

For the reasons set forth herein, and in the attached affidavit of Special Agent Stewart and the original application, which is incorporated herein by this reference, the United States respectfully requests that the Court:

(1)     SEAL the Motion to Amend and all attachments;

(2)     issue a SEALED AMENDED ORDER authorizing the collection, disclosure, and use of patient treatment records for purposes of investigating and prosecuting the amended list of facilities and individuals, including Journey to Recovery and other treatment facilities identified as owned or operated by Kenny Chatman, Laura Chatman, Reflections Treatment Center, Inc., or Stay'n Alive, Inc.

(3)     grant this Motion to Amend without notice to the persons who originally held the records, any patients, or the listed facilities and individuals; and

---

In support of its Motion, the Government states:

1.     Since the Court's Order was signed on August 3, 2016, the investigative team has collected documents related to Kenny Chatman ("Chatman") and Reflections Treatment Center ("Reflections"), and has conducted undercover recordings, interviews, and surveillance, amongst other investigative techniques.

2.     The investigation has revealed that Chatman is continuing to own and operate Reflections based upon a certificate of licensure fraudulently obtained from the Department of Children and Families ("DCF") by listing Chatman's wife, Laura Chatman, as the owner and chief executive officer. Chatman has a criminal history that would foreclose him from owning and operating Reflections and other treatment centers under DCF standards.

3.     Reflections, run by Chatman, continues to place patients at risk. As explained in Special Agent Stewart's Affidavit, on October 14, 2016, two Reflections patients who were living at a sober home named "Open Arms" overdosed, resulting in one fatality and one hospitalization. Chatman was paying the house manager at "Open Arms" to send residents to Reflections for treatment so that Chatman could bill the patients' insurance policies.

4.     Through a series of interviews, the investigative team has learned that Chatman also owns and operates a second treatment facility, "Journey to Recovery." Again, Chatman listed his wife, Laura Chatman, as the owner and Chief Executive Officer of Journey on public records and DCF filings because he would not be authorized to hold these positions due to his criminal background.

5.     Chatman is paying kickbacks to sober home owners for referrals of patients to Journey to Recovery, using the same scheme that he uses at Reflections.

6.     To document and prove Chatman's involvement in health care fraud and other

2

---

criminal conduct, collection of patient records is required. In particular, those records are the means of committing the fraud. They also will identify additional victims. Since Chatman is operating at both Reflections and Journey to Recovery, the United States respectfully requests that the prior Sealed Order be amended to make clear that, during its investigation of the employees and agents of Reflections, the investigative team also may collect, disclose, and use patient treatment records from Journey to Recovery and other treatment facilities identified as owned or operated by Chatman, his wife, Laura Chatman, or their corporate entities, Reflections Treatment Center, Inc. and Stay'n Alive, Inc.

---

(4)     include in its Amended Order the same limitations on disclosure consistent with 42 C.F.R. §§ 2.64(e) and 2.65(e) that appeared in the original Order.

Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

By:     _____
A. MARIE VILLAFAÑA
Assistant United States Attorney
ann.marie.e.villafana@usdoj.gov
Florida Bar No. 0018255
500 South Australian Avenue, Suite 400
West Palm Beach, FL 33401
Telephone: 561 820-8711
Facsimile: 561 820-8777

3

4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. _____ 16-8280-DLB

FILED by _____ D.C.

AUG - 3 2016

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

IN RE:

APPLICATION FOR ORDER TO COLLECT,
DISCLOSE, AND USE MEDICAL RECORDS TO
INVESTIGATE REFLECTIONS TREATMENT
CENTER, INC., AND ITS EMPLOYEES AND
AGENTS

_____/

SEALED APPLICATION FOR ORDER AUTHORIZING THE USE
OF MEDICAL RECORDS TO CRIMINALLY INVESTIGATE
A SUBSTANCE ABUSE TREATMENT PROGRAM
AND ITS EMPLOYEES AND AGENTS

I, Assistant United States Attorney A. Marie Villafaña, an attorney for the government as
defined by Rule 1(b)(1)(B) of the Federal Rules of Criminal Procedure, hereby apply to the
Court for an order:

1.     pursuant to § 290dd-2(b)(2)(C) of Title 42, United States Code, and §§ 2.64, 2.65,
and 2.66 of Chapter 42 of the Code of Federal Regulations, authorizing the disclosure and use of
records of the identity, diagnosis, prognosis, and treatment of patients that were maintained in
connection with a substance abuse prevention, treatment, and rehabilitation program;

2.     allowing the disclosure and use of the records to proceed without notice until after
the grand jury returns an indictment, the targets of the investigation are arrested, and discovery is
ordered produced; and

3.     sealing this Application and Order.

4.     As used herein, the "investigative team" consists of agents, employees, and task
force officers of the Federal Bureau of Investigation, agents and employees of the Internal
Revenue Service, Department of Labor, Amtrak Office of Inspector General, Office of Personnel
Management Office of Inspector General, prosecutors from the U.S. Attorney's Office, U.S.
Department of Justice, and State Attorney's Office for the 15th Judicial Circuit of Florida
("SAO"), and members of the SAO Sober Home Task Force.

5.     42 U.S.C. § 290dd-2(b) authorizes the disclosure of the content of PATIENT
TREATMENT RECORDS in limited circumstances, including when a patient provides prior
written consent, 42 U.S.C. § 290dd-2(b)(1), or when:

    authorized by an appropriate order of a court of competent jurisdiction granted
    after application showing good cause therefor, including the need to avert a
    substantial risk of death or serious bodily harm. In assessing good cause, the
    court shall weigh the public interest and the need for disclosure against the injury
    to the patient, to the physician-patient relationship, and to the treatment services.
    Upon the granting of such order, the court, in determining the extent to which any
    disclosure of all or any part of any record is necessary, shall impose appropriate
    safeguards against unauthorized disclosure.

42 U.S.C. § 290dd-2(b)(2)(C).

6.     In Section 290dd-2, Congress also required the Secretary of Health and Human
Services to promulgate "regulations to carry out the purposes of this section." 42 U.S.C. §
290dd-2(g). Those regulations appear at 42 C.F.R. §§ 2.1, et seq. Several of those regulations
apply to this application.

7.     First, 42 C.F.R. § 2.12 defines when an entity is "directly or indirectly assisted by
any department or agency of the United States" for purposes of 42 U.S.C. § 290dd-2(a).

    An alcohol abuse or drug abuse program is considered to be federally assisted if
    . . . (2) It is being carried out under a license, certification, registration or other
    authorization granted by any department or agency of the United States including
    but not limited to: . . . (iii) Registration to dispense a substance under the

3

In support of this application, I state the following:

LEGAL AUTHORITY FOR THE APPLICATION

1.     I serve as an Assistant United States Attorney with the U.S. Attorney's Office for
the Southern District of Florida, which is a prosecutorial agency having jurisdiction over the
activities of REFLECTIONS TREATMENT CENTER, INC. ("REFLECTIONS"), which is an
intensive outpatient program center (IOP), its owners, employees, and agents (jointly referred to
as the "TARGET FACILITY" and the "TARGET INDIVIDUALS," respectively).

2.     Pursuant to Title 42, United States Code, Section 290dd-2(a), records "of the
identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection
with the performance of any program or activity relating to substance abuse education,
prevention, training, treatment, rehabilitation, or research, which is conducted, regulated, or
directly or indirectly assisted by any department or agency of the United States shall . . . be
confidential and be disclosed only for the purposes and under the circumstances expressly
authorized under subsection (b) of this section."

3.     As will be explained in further detail below and in the attached affidavit FBI
Special Agent Joshua Hawkins, which is incorporated by reference, subpoenas and other legal
requests will be issued to persons and entities in connection with the investigation of the
TARGET FACILITY and TARGET INDIVIDUALS, and records and information will be
collected in response thereto. Those records and information will include records of the identity,
diagnosis, and treatment of patients that are maintained in connection with substance abuse
treatment and rehabilitation at the TARGET FACILITY (hereinafter referred to as "PATIENT
TREATMENT RECORDS").

2

Controlled Substances Act to the extent the controlled substance is used in the
treatment of alcohol or drug abuse[.]

42 C.F.R. § 2.12(b)(2). The preliminary investigation of the TARGET FACILITY suggests that
it, and/or physicians associated with it, is dispensing controlled substances purportedly in
connection with the treatment of drug abuse. Thus, although the phrase "regulated . . . by any
department or agency of the United States" is not defined, it appears that the TARGET
FACILITY's records – to the extent that they relate to substance abuse diagnosis, prognosis, or
treatment – are covered by the statute.

8.     Accordingly, out of an abundance of caution, the TARGET FACILITY will be
treated as a "federally assisted alcohol or drug abuse program;" thus, pursuant to 42 U.S.C. §
290dd-2(c), records related to the identity, diagnosis, or treatment of patients maintained in
connection with their substance abuse prevention, treatment, and/or rehabilitation at the
TARGET FACILITY cannot "be used to initiate or substantiate any criminal charges against a
patient or to conduct any investigation of a patient" except as authorized by a court order granted
under 42 U.S.C. § 290dd-2(b)(2)(C). The investigative team does not intend to investigate or
prosecute any of the TARGET FACILITY's patients.

9.     Regulations also have been promulgated setting forth procedures to obtain an
order authorizing disclosure and use of records to investigate or prosecute a program or the
person holding the records and their employees and agents. Pursuant to 42 C.F.R. § 2.66, an
"order authorizing the disclosure or use of patient records to criminally or administratively
investigate or prosecute a program or the person holding the records (or employees or agents of
that program or person) may be applied for by any . . . investigative, law enforcement, or
prosecutorial agency having jurisdiction over the program's or person's activities." As explained
in the attached Affidavit of Special Agent Hawkins, the federal crimes under investigation

4

occurred, at least in part, in the Southern District of Florida, and the U.S. Attorney's Office and the West Palm Beach grand jury have jurisdiction to investigate and prosecute the TARGET FACILITY'S and TARGET INDIVIDUALS' activities.

10.    The application may be filed even though a criminal case is not yet pending and, in the discretion of the Court, may be granted without notice. 42 C.F.R. §§ 2.66(a)(2), 2.66(b). If the Court grants the application without notice to the program, the person holding the records, and/or any patient whose records are to be disclosed, those persons must later be afforded the ability to seek revocation or amendment of the Court's Order. 42 C.F.R. § 2.66(b).

11.    An order permitting disclosure and use of records to investigate or prosecute a program or the person holding their records or their employees or agents "may be entered only if the court determines that good cause exists," which requires findings that: "(1) other ways of obtaining the information are not available or would not be effective; and (2) the public interest and need for the disclosure outweigh the potential injury to the patient, the physician-patient relationship and the treatment services." 42 C.F.R. §§ 2.64(d), 2.66(c).

12.    Any order issued pursuant to these regulations must contain restrictions to protect the confidential nature of the records. 42 C.F.R. §§ 2.64(e), 2.66(c), 2.66(d).

### FACTS IN SUPPORT OF APPLICATION

13.    In the attached Affidavit of FBI Special Agent Joshua E. Hawkins, which is incorporated herein by reference, the government sets forth facts showing that there is good cause to allow the investigative team to collect the PATIENT TREAMENT RECORDS and that good cause exists to allow the investigative team to use and disclose those PATIENT TREATMENT RECORDS in the investigation and prosecution of the TARGET FACILITY and the TARGET INDIVIDUALS.

5

### PATIENT TREATMENT RECORDS

14.    A description of the types of PATIENT TREATMENT RECORDS that are expected to be collected, used, and disclosed during the investigation is set forth in the attached affidavit of Joshua E. Hawkins. The affidavit also includes information on how PATIENT TREATMENT RECORDS will be maintained once collected.

### GOOD CAUSE EXISTS TO ALLOW THE INVESTIGATIVE TEAM TO COLLECT, USE, AND DISCLOSE THE INFORMATION IN ITS INVESTIGATION AND PROSECUTION OF THE TARGET FACILITIES AND TARGET INDIVIDUALS

15.    By this Application, the government seeks authorization for collection of the PATIENT TREATMENT RECORDS by the investigative team and further seeks permission to use the PATIENT TREATMENT RECORDS that the investigative team collects and to disclose them to other members of the investigative team, witnesses, a federal grand jury, the Court, and a trial jury to advance the investigation and prosecution of the TARGET FACILITY and TARGET INDIVIDUALS. To support the Court's determination of good cause, the government submits that the PATIENT TREATMENT RECORDS are necessary to prove beyond a reasonable doubt that a healthcare fraud scheme in violation of 18 U.S.C. §§ 1347 and 1349, and other criminal activity was occurring at the TARGET FACILITY and involved the TARGET INDIVIDUALS. While interviews of cooperating witnesses, former patients and employees, and family members of former patients can provide some information, the PATIENT TREATMENT RECORDS are needed both to corroborate those statements and, more importantly, they are the *actus reus* showing the false statements that were filed with the insurance companies. For example, witnesses interviewed as part of the investigation indicated that the TARGET FACILITY billed insurance companies for treatment that clients never actually received. Agents need to review the medical files to corroborate these statements. While witnesses could provide testimony

6

regarding these and similar issues, without documentary proof, the jury would likely find the evidence insufficient. A possibility also exists that certain testimony could be excluded as hearsay, which would not apply to records collected under the business records exception to the hearsay rule.

16.    For the foregoing reasons, the government respectfully submits that other ways of obtaining the information contained in the PATIENT TREATMENT RECORDS, which is needed to prove health care fraud, conspiracy to commit health care fraud, and other criminal violations, are not available or would not be effective and that there is a reasonable likelihood that the PATIENT TREATMENT RECORDS will disclose information of substantial value in the investigation or prosecution.

### REQUEST TO PROCEED WITHOUT NOTICE

17.    Pursuant to 42 C.F.R. § 2.66(b), the government respectfully requests that the Court exercise its discretion to grant the application without providing advance notice to the patients, the TARGET FACILITIES and TARGET INDIVIDUALS, or the persons/entities from whom the records were obtained for the reasons set forth in the attached affidavit of Special Agent Hawkins.

18.    Following the return of an indictment, the arrest of the charged individuals, and the entry of a Standing Discovery Order, the government will produce its Application and the Court's Order to the charged individuals, and to the persons and entities from whom records were obtained to allow them an opportunity to seek revocation or amendment of the Order as provided in § 2.66(b). The government also will attempt to provide notice to all patients identified in the PATIENT TREATMENT RECORDS by sending a letter to the address shown

7

in the records informing them of the Court's Order and their ability to seek revocation or amendment of the Order as provided in § 2.66(b).

### CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court SEAL and grant the Application and issue a SEALED ORDER authorizing the collection, disclosure, and use of the PATIENT TREATMENT RECORDS for purposes of investigating and prosecuting the TARGET FACILITY and TARGET INDIVIDUALS.

The United States also respectfully requests that the Court grant this Application without notice to the persons who originally held the records, any patients, or the TARGET FACILITY and TARGET INDIVIDUALS.

The United States also respectfully requests that the Court's Order provide limitations on disclosure consistent with 42 C.F.R. §§ 2.64(e) and 2.65(e).

Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

By: _____
A. MARIE VILLAFAÑA
Assistant United States Attorney
ann.marie.c.villafana@usdoj.gov
Florida Bar No. 0018255
500 South Australian Avenue, Suite 400
West Palm Beach, FL 33401
Telephone: 561 820-8711
Facsimile: 561 820-8777

8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FILED by _____ D.C.

AUG – 3 2016

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

Case No. _____16-8280-DLB_____

IN RE:

APPLICATION FOR ORDER TO COLLECT,
DISCLOSE, AND USE MEDICAL RECORDS TO
INVESTIGATE REFLECTIONS TREATMENT
CENTER, INC., AND ITS EMPLOYEES AND
AGENTS

_____/

**SEALED AFFIDAVIT OF SPECIAL AGENT JOSHUA E. HAWKINS
IN SUPPORT OF SEALED APPLICATION FOR ORDER
AUTHORIZING THE USE OF MEDICAL RECORDS
TO CRIMINALLY INVESTIGATE A DRUG AND ALCOHOL
TREATMENT PROGRAM AND ITS EMPLOYEES AND AGENTS**

I, Special Agent Joshua E. Hawkins, being duly sworn, do hereby depose and state:

1.    I am a Special Agent with the Federal Bureau of Investigation, and have been employed in this capacity since January 2006. I am currently assigned to a squad of the West Palm Beach Resident Agency of the Miami Division that investigates a variety of federal crimes, including health care fraud and human trafficking. Prior to joining the West Palm Beach Resident Agency in 2015, I was assigned to a health care fraud squad in Miami for 4½ years.

2.    I am submitting this Affidavit in support of a Sealed Application for an Order Authorizing the Use of Medical Records to Criminally Investigate a Drug and Alcohol Treatment Program, that is, REFLECTIONS TREATMENT CENTER, Inc. ("REFLECTIONS" or "TARGET FACILITY"), and Its Employees and Agents, including Kenneth Chatman ("TARGET INDIVIDUALS"). This Affidavit does not contain every fact known to me about this investigation

but only those facts necessary to show good cause for issuance of the Application and for the Court to exercise its discretion to grant the Application without notice to the program, the person holding the records, and/or any patient whose records are to be disclosed until the targets of the investigation have been arrested and discovery is produced.

3.    As used herein, the "investigative team" consists of agents, employees, and task force officers of the Federal Bureau of Investigation, agents and employees of the Internal Revenue Service, Department of Labor, Amtrak Office of Inspector General, Office of Personnel Management Office of Inspector General, prosecutors from the U.S. Attorney's Office, U.S. Department of Justice, and State Attorney's Office for the 15th Judicial Circuit of Florida ("SAO"), and members of the SAO Sober Home Task Force.

**Background on Drug and Alcohol Addiction Rehabilitation**

4.    "Sober homes" are residential facilities where residents are supposed to live together in a drug-free and alcohol-free environment while working to maintain sobriety. As a standard practice, sober homes offer no medical treatment, but strongly encourage such treatment to occur at a substance abuse treatment facility. Residents of sober homes are expected to pay their own rent and utilities, allowing the sober homes to recover its costs. In an effort to maintain a safe and sober environment for all other residents, if any resident is found to be using drugs or alcohol while living in a legitimate sober home, they will be removed from the facility.

5.    Substance abuse treatment facilities provide services, such as individual or group therapy sessions, to assist clients in overcoming their addictions. There are varying levels of treatment provided based, among other things, on the severity of the addiction, and these are categorized by federal guidelines and insurance companies as Partial Hospitalization Programs ("PHP"), Intensive Outpatient Programs ("IOP"), and Outpatient Programs ("OP"), among others.

2

PHPs, IOPs, or OPs may be billed to insurance companies when they are medically necessary, provided by, or overseen by, licensed medical professionals, and their services are lawfully rendered.

6.    Pursuant to guidelines published by the U.S. Department of Health and Human Services, Substance Abuse and Mental Health Services Administration, Center for Substance Abuse Treatment ("SAMHSA"), PHPs (as defined by SAMHSA)[1] are formal substance abuse treatment programs that provide services to clients with mild to moderate symptoms of withdrawal that are not likely to be severe or life-threatening and that do not require 24-hour medical support. PHPs are considered a "step down" from an inpatient detoxification program. Clients attending PHPs are supposed to participate in 30 or more hours of treatment per week, often provided in at least six hour-long sessions per day, for five days per week. Clients who successfully complete a PHP program should transition to IOP.

7.    According to SAMHSA's Guidelines, IOPs are formal substance abuse treatment programs that adhere to a set of formal guidelines. IOPs must be overseen by a qualified professional. Clients must receive a thorough evaluation to determine the stage and severity of their illness, including medical and mental disorders. Qualified medical personnel must assign clients to a formal treatment plan. The IOP is accountable for the treatment or referral of the client to additional services as necessary. The IOP is obligated to maintain contact with the client until recovery is completed. SAMHSA's Guidelines recommend that IOPs provide at least nine hours of treatment per week, typically in three, 3-hour sessions. Clients at IOPs also are supposed to attend at least one 30-60 minute individual counseling session per week.

_____
[1] "Partial hospitalization program" or "PHP" refers to different things in different contexts. Your Affiant is using the term as defined by SAMHSA.

3

8.    According to SAMHSA's Guidelines, OPs, also known as "aftercare" or "continuing care," are traditional outpatient treatments that followed residential or intensive outpatient treatment (IOP). This type of treatment is generally associated with mutual help support groups such as the 12-Step programs used by Alcoholics Anonymous (AA) and Narcotics Anonymous (NA). Clients might still receive occasional formal treatment from a treatment facility during this recovery period, usually once per week.

9.    SAMHSA's Guidelines provide that substance abuse treatment programs, particularly IOPs and PHPs, include the following core services: orientation and intake; bio-psychosocial assessment; individual treatment planning; group and individual counseling; psycho-educational programming; case management; integration into mutual-help and community based support groups; 24-hour crisis coverage; medical treatment; substance use screening via urine or breath tests; vocational and/or educational services; psychiatric evaluation and psychotherapy; medication management; and transition or discharge planning.

10.    Urine Analysis or urinalysis ("UA") testing is used to detect recent drug or alcohol use by a client. UA testing complexity ranges from screening tests – also known as point of care ("POC") testing – which provides instant results, to confirmatory testing, which is sent to a laboratory, for more complex analysis. UAs can be billed to insurance companies, as long as the urine test is medically necessary and ordered by a medical doctor. Sober homes committed to the sobriety of their residents use UA to confirm that residents are abiding by the rules against drug and/or alcohol abuse. Sober homes acting in compliance with SAMHSA's recommendations expel residents whose UA show recent drug and/or alcohol abuse.

11.    Point of Care ("POC") urine testing involves collecting a client's urine in a specific cup designed for testing. The specimen is analyzed using a color banded or numbered dipstick,

4

allowing for visual positive or negative results. POC urine testing usually tests for the presence of 9 to 13 specific types of drugs. POC tests typically cost between $5 and $10 and could be read easily by a layperson. This testing is convenient, inexpensive, and the results can be read quickly. POC testing is the most common form of testing performed at sober homes and treatment facilities.

12.    Confirmatory testing, conducted in a laboratory setting, uses gas liquid chromatography, mass spectrometry, and/or gas chromatography, or high performance liquid chromatography, to analyze the client's urine specimen. These techniques are highly sensitive, and accurately and definitively identify specific substances and the quantitative concentrations of the drugs or their metabolites. Confirmatory testing is more precise, more sensitive, and detects more substances than other types of urine testing. Results of confirmatory testing take longer and the tests are significantly more expensive—costing well over $1,000.

**State and Federal Prohibitions on Patient Brokering and Kickbacks and Forced Sex Trafficking**

13.    Patient brokers or marketers are individuals who recruit clients and direct them to particular treatment facilities in exchange for a fee or some type compensation. As explained below, the owners and operators of the TARGET FACILITY approached the owners of sober homes in the Palm Beach County and Broward County areas and solicited the referral of the sober home residents to the TARGET FACILITY in exchange for payment.

14.    Chapter 817 of the Florida Statutes, known as the "Florida Patient Brokering Act," makes it unlawful for any person, including any health care provider or health care facility, to:

(a) Offer or pay any commission, bonus, rebate, kickback, or bribe, directly or indirectly, in cash or in kind, or engage in any split-fee arrangement, in any form whatsoever, to induce the referral of patients or patronage to or from a health care provider or health care facility; (b) Solicit or receive any commission, bonus, rebate, kickback, or bribe, directly or indirectly, in cash or in kind, or engage in any split-fee arrangement, in any form whatsoever, in return for referring patients or patronage to or from a health care provider or health care facility; (c) Solicit or

5

receive any commission, bonus, rebate, kickback, or bribe, directly or indirectly, in cash or in kind, or engage in any split-fee arrangement, in any form whatsoever, in return for the acceptance or acknowledgement of treatment from a health care provider or health care facility; or (d) Aid, abet, advise, or otherwise participate in the conduct prohibited under paragraph (a), paragraph (b), or paragraph (c).

Fla. Stat. § 817.505.

15.    Florida law also states that it "shall constitute a material omission and insurance fraud . . . for any service provider, other than a hospital, to engage in a general business practice of billing amounts as its usual and customary charge, if such provider has agreed with the insured or intends to waive deductibles or copayments, or does not for any other reason intend to collect the total amount of such charge." Fla. Stat. § 817.234(7)(a).

16.    Federal law makes it a crime for anyone to knowingly or willfully execute or attempt to execute a scheme or artifice: (1) to defraud any health care benefit program or (2) to obtain by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by or under the custody or control of a health care benefit program, in connection with the delivery of or payment for health care benefits, items, or services. 18 U.S.C. § 1347(a).

17.    A "scheme or artifice to defraud" includes schemes to deprive another of the "intangible rights of honest services" through the use of kickback and bribery schemes. 18 U.S.C. § 1346; *see also Fordham v. United States*, 706 F.3d 1345, 1348, 1349 n.4 (11th Cir. 2013) (discussing *Skilling v. United States*, 561 U.S. 358 (2010)).

18.    To be convicted of health care fraud, one need not have actual knowledge of § 1347(a) or the specific intent to violate it. 18 U.S.C. § 1347(b).

19.    A "health care benefit program" is defined as "any public or private plan or contract, affecting commerce, under which any medical benefit, item or service is provided to any

6

individual, and includes any individual or entity who is providing a medical benefit, item, or service for which payment may be made under the plan or contract." 18 U.S.C. § 24(b). The TARGET ENTITY billed private insurance policies and Affordable Care Act insurance plans, both of which fall within the definition of "health care benefit programs." Attempts and conspiracies to violate § 1347 are also violations of federal law. 18 U.S.C. § 1349.

20.    Additionally, paying or receiving kickbacks also violates the federal Anti-Kickback Act, 42 U.S.C. § 1320a-7b(b), if the kickbacks are paid or received in connection with a "Federal health care program," which is defined to include "any plan or program that provides health benefits, whether directly, through insurance, or otherwise, which is funded directly, in whole or in part, by the United States Government . . ." or "any State health care program." 42 U.S.C. § 1320a-7b(f). The investigative team is investigating whether the TARGET ENTITY billed and received payments from any directly federally funded programs such as TriCare, and any State health care programs. As noted above, private insurers who offered their insurance through the Affordable Care Act were billed.

21.    While not specifically related to the collection, use, and disclosure of PATIENT TREATMENT RECORDS, as explained below, the investigative team is also investigating allegations of forced sex trafficking in violation of 18 U.S.C. § 1591(a)(1) at the TARGET ENTITY and sober homes owned or operated by CHATMAN. Section 1591(a)(1) makes it a federal offense for anyone, in or affecting interstate or foreign commerce, to knowingly harbor, transport, provide, obtain, or maintain by any means a person, knowing, or in reckless disregard of the fact, that means of force, threats of force, fraud, coercion, or any combination of such means will be used to cause the person to engage in a commercial sex act.

7

**Background of the Investigation**

22.    In September 2013, West Palm Beach Police Department investigators related to the FBI, information provided by two patients of NEW HOPE TREATMENT CENTER, which was owned and/or operated by KENNETH CHATMAN and associates of his. The patients described being provided drugs and condoms and forced into prostitution by CHATMAN and others. They also stated that since they were provided with drugs, they were unable to pass mandatory UA tests. Employees of NEW HOPE would themselves provide urine for the tests. Additionally, billing of the patients' insurance companies for therapy continued, even though no therapy was provided.

23.    On April 1, 2015, "Confidential Witness 1" (CW1) related to agents of the FBI and investigators of the Palm Beach County Sheriff's Office and West Palm Beach Police Department, that he/she had been in rehabilitation for addiction to heroin. He/she resided in one of several sober homes operated and functionally owned by CHATMAN and located within Palm Beach County. CHATMAN and his wife, LAURA CHATMAN, also own REFLECTIONS, where many residents of CHATMAN's sober homes attended IOP. This sober home was a "flop house," meaning that drug use was not only permitted, but was encouraged. CHATMAN and his associates forced the residents of the sober home into prostitution, even advertising them on webpages through a local escort service. The only alternative to engaging in prostitution was to steal high-end items from retail stores and turn the items over to CHATMAN and associates. CW1 was personally forced into prostitution on numerous occasions and was raped by associates of CHATMAN.

24.    On July 17, 2015, CW2 related to agents of the FBI that he/she attended IOP sessions at REFLECTIONS. REFLECTIONS did conduct group therapy sessions and had a

8

medical doctor, a chiropractor and a massage therapist on-site. CW2 did not receive services from these individuals, but was told by CHATMAN and associates that he/she had to sign to verify that the services had been received or would be required to leave the program.

25.    On July 15, 2015, CW3 related to agents of the FBI that he had been an employee of REFLECTIONS. CW3 personally observed CHATMAN and associates verbally and physically abuse clients of REFLECTIONS. CW3 further reported that CHATMAN and associates would confiscate clients' phones and not return them in order to limit the clients' ability to contact people outside the program. CW3 stated that REFLECTIONS billed for therapy and urine analysis (UA) for days on which clients were not present. One of CW3's responsibilities was to conduct head counts for therapy sessions, which often did not match the number of clients ultimately billed for therapy.

26.    CHATMAN and his associates have, currently and in the past, operated several sober homes throughout Palm Beach County under CHATMAN's company, STAY'N ALIVE, INC. These sober homes were located in residential neighborhoods and were generally rental homes. The sober homes have in the past been relocated to avoid law enforcement, because the group was evicted, or for other reasons. Witness interviews and REFLECTIONS' website have shown the following addresses to be possible locations of sober homes operated by CHATMAN:

- 1331 South M Street, Lake Worth, Florida
- 5649 Strawberry Lakes Circle, Lake Worth, Florida
- 9060 Wauconda Way, Lake Worth, Florida
- 962 West 43rd Street, West Palm Beach, Florida
- 10152 Boynton Place Circle, Boynton Beach, Florida
- 1850 SW 51 Terrace, Plantation, Florida (Broward County)

9

27.    In June 2016, Investigator Nicole Lucas of the SAO Sober Home Task Force spoke with a past proven reliable confidential informant ("CI"). The CI reported the following. He/she is the owner of a halfway house residence business and he/she has a contract with the TARGET FACILITY. He/she is paid by the TARGET FACILITY to provide "case management" in exchange for a weekly or monthly fee. The fee is approximately $500 per week per patient/client that he/she sends to the listed IOP providers. The payment is made to the CI in the form of a handwritten check.

28.    The CI reported that the commissions are disguised as payments for "case management," and that the TARGET FACILITY required the CI to enter into written "case management" agreement/contract. Pursuant to this "case management" agreement, the CI is to provide housing for each of the clients/patients involved. The CI does not receive any payments from the clients/patients. It should be noted that housing in a "sober home" is not covered by insurance. Also, as noted above, the CI reported that he/she only receives payments from the TARGET FACILITY for the clients that have valid medical insurance despite the fact that he/she provides the same "case management" services to his/her uninsured clients. The CI reported that the TARGET FACILITY has physically made payments to the CI, and he/she is expected to continue receiving commission payments in accordance with the "case management" agreements so long as he/she provides patients to the TARGET FACILITY.

29.    The CI states that the clients/patients are treated poorly at REFLECTIONS, but continue on as clients/patients because of the services provided to them by the facility ("Chatman gives the best stuff"). The clients/patients receive at minimum 2 packages of cigarettes per week, hair styling and nail treatments for females, barber services for males, and clothing, aside from

10

whatever medical "treatment" is provided. These benefits are defined in Fla. Stat. § 817.505 as inducements for patronage to a health care facility (i.e. Reflections IOP).

### PATIENT TREATMENT RECORDS

30.    The investigation of the TARGET FACILITY and TARGET INDIVIDUALS is expected to result in the collection of PATIENT TREATMENT RECORDS in "hard-copy" and electronic format, as follows:

(a)    medical patient files for the clients of the TARGET FACILITY, which includes PATIENT TREATMENT RECORDS, will be obtained via subpoenas, search warrants, or court orders to be applied for at some point in the future, or via patient consent;

(b)    insurance claims and supporting documentation, which includes PATIENT TREATMENT RECORDS, will be obtained via subpoenas issued to various health insurance providers;

(c)    medical patient files in electronic format, which includes PATIENT TREATMENT RECORDS, for the clients of the TARGET FACILITIES will be obtained through one or more subpoenas, court orders, and/or search warrants issued to Kipu Systems, LLC[2] ("Kipu"), a company that the TARGET FACILITY hired to provide electronic medical record ("EMR") technology and cloud access;

(d)    medical patient files in electronic format, which includes PATIENT TREATMENT RECORDS, for the clients of the TARGET FACILITIES will be obtained through

---

[2] Kipu's Terms of Use notified users that, "Pursuant to receipt of a subpoena, court order, or any other legal document of similar authority, we may release confidential information when requested. If subject to a civil matter, you may file any pleadings you wish, at your sole cost and expense, to prevent disclosure of information. If subject of a government issued subpoena, court order, or any other legal document of similar authority, the material will be released summarily." (See http://kipusystems.com/terms/.)

11

subpoenas and/or search warrants issued to sober homes and doctors contracted by the TARGET FACILITIES;

(e)    additional records will be obtained via subpoenas, search warrants and/or FBI Requests for Information ("RFIs") that are not directed to PATIENT TREATMENT RECORDS but which could, incidentally, identify the names of persons who received treatment at the TARGET FACILITY, including, but not limited to (i) records of the bank accounts of the TARGET FACILITY, the TARGET INDIVIDUALS, and related persons and entities; (ii) telephone records of the TARGET FACILITY, the TARGET INDIVIDUALS, and related persons and entities; and

(f)    additional records have been and will be obtained via cooperating witnesses who voluntarily provide information, which may include PATIENT TREATMENT RECORDS, for the clients of the TARGET FACILITY.

31.    PATIENT TREATMENT RECORDS obtained during the investigation by members of the investigative team will be treated as evidentiary. Accordingly, hard-copy records will be stored in secure locations in controlled spaces within the relevant investigative team member's agency, except for periods of time when the files are being shipped and/or otherwise transported. Electronic records will likely be uploaded into case management systems that have the ability to restrict access to individuals not involved with the ongoing investigation and will be specially designated as confidential pursuant to Title 42.

### The Public Interest and the Severity of the Crimes Under Investigation

32.    In addition to a significant financial loss to the victim insurance companies who reimbursed the TARGET FACILITY for fraudulent insurance claims, this scheme has negatively

12

impacted addicts who sought out treatment at the TARGET FACILITY but instead received substandard care or no care at all.

33.    An analysis conducted by the FBI on another facility purportedly operating in a similar manner, revealed that 10 out of approximately 524 former patients of the facility died after their discharge from the facility.  With regard to facilities owned or operated by CHATMAN and his wife, there are first-hand reports of patients being provided with controlled substances and/or being encouraged to use drugs.  If a patient "relapses," an insurance company can be billed for additional treatment.  The TARGET FACILITY's business model focuses more on making money from the patients' insurance than on assisting them overcome their addiction.  While death rates for drug and alcohol addicts are inherently higher, sobriety is made more difficult when treatment facilities such as the TARGET FACILITY falsely purports to treat clients.  Between January 1, 2015 and December 31, 2015, 413 overdose deaths occurred in Palm Beach County, and police and EMTs were called to address overdoses at Palm Beach County sober homes on at least 33 occasions.  While some white collar offenses are not normally considered "extremely serious," in this case, the health care fraud scheme under investigation is directed at an extremely vulnerable patient population with devastating consequences.

34.    Media outlets in the Palm Beach County-area have extensively reported about the fraud and abuse occurring in the treatment industry.  The lucrative side of addiction treatment has attracted ill-intentioned sober home operators and treatment facility owners who enter the market, not to treat addicts, but to make money.  As a result, brokers and facility owners are incentivized to locate and recruit addicts with insurance policies that will pay for drug and alcohol treatment, such as detox, IOP, PHP, and UA testing.  Instead of looking out for the best interests of the addicts, corrupt brokers and facility owners are consumed with finding patients with the highest

13

paying insurance policies.  Addicts seeking help who are unfortunate enough to enroll in a fraudulently operated facility become victims of neglect and abuse.

35.    To address the influx of fraudulent sober homes and treatment facilities operating in the greater-Palm Beach area, 11 local, state and federal law enforcement agencies have dedicated resources to an FBI-led task force charged with investigating fraudulent facilities.  To date, the Florida Division of Insurance Fraud has received more than 350 tips from outside parties alleging fraud occurring at over 175 different facilities in South Florida.  The FBI's task force has begun investigating more than 10 facilities alleged to have engaged in fraud and patient brokering activity.  The SAO also has established a Sober Home Task Force, and state and federal authorities are working together to try to eradicate what has become a serious public health problem.

36.    If patient files obtained from the TARGET ENTITY and other future targets are excluded from being used for criminal investigation and prosecution, investigation and prosecution of this crime would be seriously hindered.  Patients, whose privacy these statutes were enacted to protect, would continue to be neglected and abused by fraudulent sober home operators and treatment facility owners with resulting physical harm.  Exclusion of these medical files would protect the fraudulent facilitators from enforcement and would allow them to continue abusing vulnerable addicts.

37.    Based upon the information learned through the investigation to date, and based upon my training and experience in investigating health care fraud and forced sex trafficking, I know that persons committing these offenses are likely to destroy evidence, threaten witnesses and victims, and/or flee the jurisdiction if they learn that they are under investigation.  Accordingly, I believe that early disclosure of the information contained in this Application or disclosure of any

14

Order granting this Application could compromise the integrity of the investigation and the safety of others.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

*[signature]*
Joshua H. Hawkins, Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me
this ___ day of August, 2016.

*[signature]*
DAVE LEE BRANNON
UNITED STATES MAGISTRATE JUDGE

Certified to be a true and
correct copy of the document on file
Steven M. Larimore, Clerk,
U.S. District Court
Southern District of Florida
By _____ Deputy Clerk
Date 8-3-16

15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.        16-8280-DLB

IN RE:

APPLICATION FOR ORDER TO COLLECT,
DISCLOSE, AND USE MEDICAL RECORDS TO
INVESTIGATE REFLECTIONS TREATMENT
CENTER, INC., AND ITS EMPLOYEES AND
AGENTS
                                                    /

FILED by _____ D.C.

AUG – 3 2016

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

SEALED ORDER

THIS MATTER has come before the Court upon the Application Under Seal filed by the United States of America, for an Order pursuant to 42 U.S.C. § 290dd-2 and 42 C.F.R. §§ 2.64 and 2.66 authorizing the collection, disclosure, and use of patient treatment records, including any confidential communications contained therein, to criminally investigate employees and agents of a federally regulated and/or supported substance abuse treatment program, specifically:

REFLECTIONS TREATMENT CENTER, INC.

The Court finds that the Applicant has shown good cause for the issuance of the Order, specifically that there is cause to believe that employees or agents of the program are engaged in criminal misconduct that is extremely serious, other ways of obtaining evidence of this criminal activity are not available or would not be effective, and the public interest and need for the collection, disclosure, and use of these records outweigh the potential injury to patients of the programs, physician-patient relationships, and the treatment services.

The Court further finds and orders as follows:

1.     The investigation being conducted by the investigative team, which is defined to include agents, employees, and task-force officers of the Federal Bureau of Investigation, agents and employees of the Internal Revenue Service, Department of Labor, Amtrak Office of Inspector General, Office of Personnel Management Office of Inspector General, prosecutors from the U.S. Attorney's Office, U.S. Department of Justice, and State Attorney's Office for the 15th Judicial Circuit of Florida ("SAO"), and members of the SAO Sober Home Task Force, is within the lawful jurisdiction of the government authority seeking access to the records, as provided in 42 C.F.R. § 2.66(a)(1).

2.     There is reason to believe that the records sought are relevant to a legitimate law enforcement inquiry.

3.     The application and order do not refer to any patient by name and do not contain or otherwise disclose any patient identifying information, as provided in 42 C.F.R. § 2.66(a)(2).

4.     Good cause exists for this Order in that: (a) there are no other effective ways of obtaining the information sought, as provided in 42 C.F.R. § 2.64(d)(1); and, (b) the public interest and need for disclosure of the records outweigh the potential injury to the patient/client, the physician-patient relationship, and to the treatment services, as provided in 42 C.F.R. § 2.64(d)(2).

5.     The criminal activity alleged to have been committed includes "extremely serious crimes," as provided in 42 C.F.R. § 2.63(a)(2), due to the extreme vulnerability of the patient population as evidenced by lethal and non-lethal overdoses by patients of the facility, and allegations of rape and forced prostitution of clients of the program.

6.     The investigative team properly may collect patient treatment records through legal process, and may use and disclose all such records during its investigation and prosecution,

<div align="center">2</div>

including any confidential communications contained therein, pursuant to the terms set forth below.

7.     As provided in 42 C.F.R. § 2.64(e)(1), disclosure shall be limited to parts of the patient/client records regarding (1) prescriptions for drug testing; (2) claims data, billing information, and payments for reimbursement for drug testing; (3) how results of drug testing were or were not used in directing the patient's treatment; (4) insurance claims and reimbursements, to include all documentation and information on which REFLECTIONS relied to support its requests for insurance reimbursements, including documentation to establish that billed services were rendered and medically necessary; (5) payments made to or received from patients, sober home residents, sober home owners, and/or owners of other drug treatment facilities; (6) how patients paid for services at REFLECTIONS, including any documentation of payments "in kind" or through services that could include prostitution; (7) special investigations unit ("SIU") documentation and audit information; and (8) patient relapses, overdoses, or calls for emergency or police services at REFLECTIONS.  If other information has been or, in the future, is voluntarily disclosed to the investigative team, they may retain it subject to the protections set forth herein.

8.     As provided in 42 C.F.R. § 2.64(e)(2), access to the records shall be limited to members of the investigative team, including agents, analysts, auditors, experts and consultants, and to consultants, auditors or experts who may be retained to evaluate the evidence for purposes of trial; to members of the grand jury; and to persons interviewed during the course of the investigation and witnesses who may be called to testify at administrative or judicial hearings to the extent the information in the records may be relevant to their testimony.  This paragraph authorizes members of the investigative team to show the records to individuals and their counsel

<div align="center">3</div>

during interviews and proffers, but those individuals and counsel cannot keep copies of the records.

9.     As provided in 42 C.F.R. § 2.66(d)(1), the investigative team shall redact all client identification information (as defined by 42 C.F.R. § 2.11), if records are disclosed to individuals not authorized under the order to view such information (except that they may be disclosed to the court in camera should the court need it in furthering the disposition of the case).

10.     Prior to the disclosure of such patient identifying information in a court proceeding, the U.S. Attorney's Office shall file an appropriate motion to seal that information from public scrutiny pursuant to 42 C.F.R. § 2.67(d)(4).  If the U.S. Attorney's Office needs to disclose as discovery any information collected pursuant to this Order, it shall apply for and obtain a Protective Order.

11.     As provided in 42 C.F.R. §§ 2.66(c), (d)(1) and 2.64(e)(3), the investigative team shall refrain from using any information obtained pursuant to this Order to conduct any investigation or prosecution of a patient/client, or as the basis for an application for an order under 42 C.F.R. § 2.65.

12.     As provided in 42 C.F.R. § 2.66(b), notice of the Application and this Order are not required at this time.  After the grand jury returns an indictment, the targets of the investigation are arrested, and discovery is ordered produced, the U.S. Attorney's Office shall produce its Application and the Court's Order to the charged individuals, and to the persons and entities from whom the records were obtained to allow them an opportunity to seek revocation or amendment of the Order as provided in 42 C.F.R. § 2.66(b).  The U.S. Attorney's Office also shall send a letter to all patients identified in the patient treatment records at the address shown in the records.  The letter shall inform the patients of the Court's Order and their ability to seek revocation or amendment of

<div align="center">4</div>

this Order appropriately limited to the presentation of evidence on the statutory and regulatory criteria for the issuance of the Order as provided in § 2.66(b).

13.     The Application and this Court's Order shall be SEALED until further Order of this Court, except that:

    a.   copies shall be provided to the U.S. Attorney's Office and law enforcement as necessary to the performance of their official duties; and

    b.   pursuant to 42 C.F.R. § 2.61(a), a copy of this Order may be served alongside legal process (e.g., grand jury subpoena, search warrant, FBI Request for Information) to obtain patient treatment records as authorized herein.  Any person or entity provided with a copy of this Order shall be informed that this Order is Sealed and may not be further disclosed without permission of the Court.

DONE AND ORDERED in Chambers at West Palm Beach, Florida, this _____ day of August, 2016.

                                     DAVE LEE BRANNON
                                     UNITED STATES MAGISTRATE JUDGE

Copy furnished:

A. Marie Villafaña, AUSA
Joshua Hawkins, FBI

<div align="center">5</div>

**AFFIDAVIT IN SUPPORT OF MOTION TO AMEND**

I, Special Agent William Stewart, being duly sworn, do hereby depose and state:

1. I am a Special Agent with the Federal Bureau of Investigation (FBI), currently assigned to the Miami Division, Palm Beach County Resident Agency. I have been employed with the FBI for more than six years. Prior to becoming a Special Agent, I worked in the banking industry for approximately five years, employed as a fraud and anti-money laundering investigator and as a Bank Officer managing the corporation's Bank Secrecy Act program. I am presently assigned to investigate a wide variety of health care fraud matters, including schemes to defraud private insurance companies. I have received training from the FBI on matters related to health care fraud investigations and have attended multiple conferences and seminars on conducting health care fraud investigations.

2. I submit this affidavit in support of the United States of America's Motion to Amend the Court's prior Order authorizing the collection, disclosure and use of patient treatment records to criminally investigate employees and agents of a federally regulated and/or supported substance abuse treatment program, filed under Case Number 16-8280-DLB , and the Court's prior Order authorizing the use of undercover agents and informants to criminally investigate owners, employees, and agents of a substance abuse treatment program, filed under Case Number 16-8281-DLB. Since the original affidavit was filed with the court, new criminal activity has been identified related to REFLECTIONS TREATMENT CENTER ("REFLECTIONS") and Kenneth Chatman ("CHATMAN"), occurring at JOURNEY TO RECOVERY ("JOURNEY").

3. I am submitting this addendum to expand the previous court orders to allow the collection, disclosure and use of patient treatment records, including any confidential communications contained therein, and to use undercover agents and informants to criminally investigate employees and agents of JOURNEY and any other subsequently identified substance abuse treatment programs owned or operated by CHATMAN, his wife, and their corporate entities, "Reflections Treatment Center, Inc." and "Stay'n Alive, Inc."

4. Since August 3, 2016, when the original orders were obtained, the investigative team has been collecting evidence, conducting surveillance, and conducting undercover recordings with CHATMAN. On October 14, 2016, two REFLECTIONS patients suffered drug overdoses. One resulted in death and the second resulted in hospitalization. The patients were residents of a sober home named "Open Arms," which is not owned or operated by CHATMAN. A confidential witness ("CW1") who resided at Open Arms and knew both victims informed the investigative team that Open Arms received payments from REFLECTIONS each week in exchange for patients sent to REFLECTIONS for treatment. Surveillance later observed a van from REFLECTIONS traveling to Open Arms and picking up patients.

5. On October 28, 2016 and November 4, 2016, the investigative team interviewed a second Confidential Witness ("CW2"), who was formerly employed at REFLECTIONS and currently works at JOURNEY. From the interview of CW2 and a review of publicly-available information, your Affiant knows that JOURNEY is a Substance Abuse Treatment Program that operates an Intensive Outpatient Program ("IOP") and a Partial Hospitalization Program ("PHP") at 7451 South Military Trail, Lake Worth, Florida. Although the Chief Executive Officer ("CEO") is listed as Laura Chatman ("Laura"), CW2 has informed your Affiant that CHATMAN is the true owner, not Laura, and is in charge of all operations at JOURNEY. According to CW2, Laura is listed on incorporation documents and on Department of Children and Families licensing paperwork because CHATMAN has a criminal history that precludes him from being the owner of a Substance Abuse Treatment Program.

6. CW2 reported that JOURNEY operates in a similar fashion as REFLECTIONS. The two facilities share common owners, common employees and provide common services. Like REFLECTIONS, JOURNEY obtains insured clients by paying illegal kickbacks to sober home owners. CW2 has had discussions with sober home owners related to illegal kickback payments made to them by CHATMAN inside the offices of JOURNEY. According to CW2, future meetings between CHATMAN and potential new sober home owners are scheduled to occur inside the offices of JOURNEY.

7. For these reasons, and the reasons already stated in the original affidavit filed with the Court, your Affiant requests that the existing court orders be expanded to allow the Collection, Disclosure, and Use of Patient Treatment Records and to allow the Use of Undercover Agents and Informants to Criminally Investigate JOURNEY and any other treatment centers later identified as owned or operated by Kenny Chatman, Laura Chatman, Reflections Treatment Center, Inc., or Stay'n Alive, Inc.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

[signature]
Special Agent William Stewart
Federal Bureau of Investigation

Subscribed and sworn to before me
this 8th day of November, 2016

[signature]
DAVE LEE BRANNON
UNITED STATES MAGISTRATE JUDGE

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 16-8280-DLB**

**IN RE:**

**APPLICATION FOR ORDER TO COLLECT, DISCLOSE, AND USE MEDICAL RECORDS TO INVESTIGATE REFLECTIONS TREATMENT CENTER, INC., AND ITS EMPLOYEES AND AGENTS**
/

FILED BY [initials] D.C.
NOV 08 2016
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

**AMENDED SEALED ORDER**

THIS MATTER has come before the Court upon the United States of America's Motion to Amend the Sealed Order entered pursuant to 42 U.S.C. § 290dd-2 and 42 C.F.R. §§ 2.64 and 2.66 authorizing the collection, disclosure, and use of patient treatment records, including any confidential communications contained therein, to criminally investigate employees and agents of a federally regulated and/or supported substance abuse treatment program, specifically to expand its investigation to the entity known as "Journey to Recovery" located at 7451 South Military Trail, Lake Worth, Florida, and any treatment centers later identified as owned or operated by Kenny Chatman, Laura Chatman, Reflections Treatment Center, Inc., or Stay'n Alive, Inc.

Accordingly, having found good cause, it is hereby ORDERED AND ADJUDGED that the Court's Order of August 3, 2016, is amended. The Court hereby grants authorization, pursuant to 42 U.S.C. § 290dd-2 and 42 C.F.R. §§ 2.64 and 2.66 to collect, disclose, and use patient treatment records, including any confidential communication contained therein, to criminal investigated employees and agents of a federally regulated and/or supported substance abuse treatment programs, specifically:

REFLECTIONS TREATMENT CENTER, INC., JOURNEY TO RECOVERY, AND ANY TREATMENT CENTERS LATER IDENTIFIED AS OWNED OR OPERATED BY KENNY CHATMAN, LAURA CHATMAN, REFLECTIONS TREATMENT CENTER, INC., OR STAY'N ALIVE, INC. (hereinafter referred to as the "Treatment Centers")

The Court finds that the Applicant has shown good cause for the issuance of the Amended Order, specifically that there is cause to believe that employees or agents of the programs are engaged in criminal misconduct that is extremely serious, other ways of obtaining evidence of this criminal activity are not available or would not be effective, and the public interest and need for the collection, disclosure, and use of these records outweigh the potential injury to patients of the programs, physician-patient relationships, and the treatment services.

The Court further finds and orders as follows:

1.      The investigation being conducted by the investigative team, which is defined to include agents, employees, and task force officers of the Federal Bureau of Investigation, agents and employees of the Internal Revenue Service, Department of Labor, Amtrak Office of Inspector General, Office of Personnel Management Office of Inspector General, prosecutors from the U.S. Attorney's Office, U.S. Department of Justice, and State Attorney's Office for the 15th Judicial Circuit of Florida ("SAO"), and members of the SAO Sober Home Task Force, is within the lawful jurisdiction of the government authority seeking access to the records, as provided in 42 C.F.R. § 2.66(a)(1).

2.      There is reason to believe that the records sought are relevant to a legitimate law enforcement inquiry.

3.      The application and order do not refer to any patient by name and do not contain or otherwise disclose any patient identifying information, as provided in 42 C.F.R. § 2.66(a)(2).

4.      Good cause exists for this Order in that: (a) there are no other effective ways of obtaining the information sought, as provided in 42 C.F.R. § 2.64(d)(1); and, (b) the public interest and need for disclosure of the records outweigh the potential injury to the patient/client, the physician-patient relationship, and to the treatment services, as provided in 42 C.F.R. § 2.64(d)(2).

5.      The criminal activity alleged to have been committed includes "extremely serious crimes," as provided in 42 C.F.R. § 2.63(a)(2), due to the extreme vulnerability of the patient population as evidenced by lethal and non-lethal overdoses by patients of the facility, and allegations of rape and forced prostitution of clients of the program.

6.      The investigative team properly may collect patient treatment records through legal process, and may use and disclose all such records during its investigation and prosecution, including any confidential communications contained therein, pursuant to the terms set forth below.

7.      As provided in 42 C.F.R. § 2.64(e)(1), disclosure shall be limited to parts of the patient/client records regarding (1) prescriptions for drug testing; (2) claims data, billing information, and payments for reimbursement for drug testing; (3) how results of drug testing were or were not used in directing the patient's treatment; (4) insurance claims and reimbursements, to include all documentation and information on which the Treatment Centers relied to support their requests for insurance reimbursements, including documentation to establish that billed services were rendered and medically necessary; (5) payments made to or received from patients, sober home residents, sober home owners, and/or owners of other drug treatment facilities; (6) how

patients paid for services at the Treatment Centers, including any documentation of payments "in kind" or through services that could include prostitution; (7) special investigations unit ("SIU") documentation and audit information; and (8) patient relapses, overdoses, or calls for emergency or police services at the Treatment Centers. If other information has been or, in the future, is voluntarily disclosed to the investigative team, they may retain it subject to the protections set forth herein.

8.      As provided in 42 C.F.R. § 2.64(e)(2), access to the records shall be limited to members of the investigative team, including agents, analysts, auditors, experts and consultants, and to consultants, auditors or experts who may be retained to evaluate the evidence for purposes of trial; to members of the grand jury; and to persons interviewed during the course of the investigation and witnesses who may be called to testify at administrative or judicial hearings to the extent the information in the records may be relevant to their testimony. This paragraph authorizes members of the investigative team to show the records to individuals and their counsel during interviews and proffers, but those individuals and counsel cannot keep copies of the records.

9.      As provided in 42 C.F.R. § 2.66(d)(1), the investigative team shall redact all client identification information (as defined by 42 C.F.R. § 2.11), if records are disclosed to individuals not authorized under the order to view such information (except that they may be disclosed to the court in camera should the court need it in furthering the disposition of the case).

10.     Prior to the disclosure of such patient identifying information in a court proceeding, the U.S. Attorney's Office shall file an appropriate motion to seal that information from public scrutiny pursuant to 42 C.F.R. § 2.67(d)(4). If the U.S. Attorney's Office needs to disclose as

discovery any information collected pursuant to this Order, it shall apply for and obtain a Protective Order.

11.     As provided in 42 C.F.R. §§ 2.66(c), (d)(1) and 2.64(e)(3), the investigative team shall refrain from using any information obtained pursuant to this Order to conduct any investigation or prosecution of a patient/client, or as the basis for an application for an order under 42 C.F.R. § 2.65.

12.     As provided in 42 C.F.R. § 2.66(b), notice of the Application, the Motion to Amend, and the Court's Orders are not required at this time.  After the grand jury returns an indictment, the targets of the investigation are arrested, and discovery is ordered produced, the U.S. Attorney's Office shall produce its Application and the Court's Order to the charged individuals, and to the persons and entities from whom records were obtained to allow them an opportunity to seek revocation or amendment of the Order as provided in § 2.66(b). The U.S. Attorney's Office also shall send a letter to all patients identified in the patient treatment records at the address shown in the records. The letter shall inform the patients of the Court's Order and their ability to seek revocation or amendment of this Order appropriately limited to the presentation of evidence on the statutory and regulatory criteria for the issuance of the Order as provided in § 2.66(b).

13.     The Motion to Amend, including all attachments, and this Court's Order shall be SEALED until further Order of this Court, except that:

     a.  copies shall be provided to the U.S. Attorney's Office and law enforcement as necessary to the performance of their official duties; and

     b.  pursuant to 42 C.F.R. § 2.61(a), a copy of this Order may be served alongside legal process (e.g., grand jury subpoena, search warrant, FBI Request for

Information) to obtain patient treatment records as authorized herein.   Any person or entity provided with a copy of this Order shall be informed that this Order is Sealed and may not be further disclosed without permission of the Court.

DONE AND ORDERED in Chambers at West Palm Beach, Florida, this 8ᵗʰ day of November, 2016.

_____
DAVE LEE BRANNON
UNITED STATES MAGISTRATE JUDGE

Copy furnished:

A. Marie Villafaña, AUSA
William Stewart, FBI

6

Certified to be a true and
correct copy of the document on file
Steven M. Larimore, Clerk,
U.S. District Court,
Southern District of Florida

By _____ Deputy Clerk

Date _____