UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

17-80013-CR-MIDDLEBROOKS/BRANNON
(Magistrate Judge William Matthewman)



UNITED STATES OF AMERICA

v.

DONALD WILLEMS,

    Defendant.
_____/

**UNDER SEAL**

## UNITED STATES' *EX PARTE* MOTION FOR REVOCATION OF RELEASE PURSUANT TO 18 U.S.C. 3148(b)

COMES NOW the United States, by and through the undersigned Assistant United States Attorney, and moves the Court *ex parte* for an Order revoking the release of Defendant Donald Willems on the following grounds: (1) he has been engaged in ongoing criminal activity while on pretrial release and (2) he has violated the terms of his bond.

### Standard of Review

18 U.S.C. § 3148(a) states that a "person who has been released under section 3142 of this title, and who has violated a condition of his release, is subject to a revocation of release, an order of detention, and a prosecution for contempt of court."

18 U.S.C. § 3148(b) provides:

> The attorney for the Government may initiate a proceeding for revocation of an order of release by filing a motion with the district court. A judicial officer may issue a warrant for the arrest of a person charged with violating a condition of release, and the person shall be brought before a judicial officer in the district in which such person's arrest was ordered for a proceeding in accordance with this section. To the extent practicable, a person charged with violating the condition of release that such person not commit a Federal, State, or local crime during the period of release, shall be brought before the judicial officer who ordered the release and whose order is alleged to have been violated. The judicial officer shall enter an order of revocation and detention if, after a hearing, the judicial officer –

>   (1) finds that there is –
>
>   (A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or
>   (B) clear and convincing evidence that the person has violated any other condition of release; and
>
>   (2) finds that –
>
>   (A) based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or
>
>   (B) the person in unlikely to abide by any condition or combination of conditions of release.
>
> If there is probable cause to believe that, while on release, the person committed a Federal, State, or local felony, a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community. . . .

18 U.S.C. § 3148(b).

Upon the government's *ex parte* motion pursuant to Section 3148, the Court can grant "an immediate, but temporary, revocation of [the defendant's] . . . bond and issuance of an arrest warrant," followed by "the granting of a hearing immediately after the person is brought into custody in order to determine whether the bond should be permanently revoked." *United States v. Bowdach*, 561 F.2d 1160, 1166 (5th Cir. 1977). This allows the Court to address concerns regarding the defendant's risk of flight and the safety of the community as well as the defendant's due process concerns.

## **Procedural History**

On December 20, 2016, a sealed criminal complaint was filed charging defendant Donald Willems, D.O., and five others with conspiracy to commit health care fraud, in violation of 18

2

U.S.C. § 1349 (DE1). The Court issued an arrest warrant, and all of the defendants were arrested on December 21, 2016 (DE19). Willems made his initial appearance the same day (*id.*). The Court accepted the government's recommendation of setting a $100,000 corporate surety bond (*see* DE19, 29). Although the defendant was arrested for a "white collar" offense, Willems was also on bond from the Broward County Circuit Court, where he had been charged in 2012 in connection with unlawfully dispensing pain medication (a "pill mill" case). Given that Willems was accused of committing the federal offense while on state bond, a high corporate surety bond was deemed necessary to prevent the defendant's flight and to protect the community.

The bond imposed by the Court contained the following standard condition: the defendant "[s]hall not commit any act in violation of state or federal laws" (DE29 at 1). The bond also contained the following special conditions: (1) the defendant shall "[a]void all contact with victims or witnesses to the crimes charged, except through counsel" and (2) the "defendant shall not provide services to sober homes or substance abuse treatment centers" (DE29 at 2).

The defendant was warned that violation of the conditions of release "may result in the immediate issuance of a warrant for the defendant's arrest, a revocation of release, an order of detention, as provided in 18 U.S.C. § 3148, forfeiture of any bail posted, and a prosecution for contempt as provided in 18 U.S.C. § 401, which could result in a possible term of imprisonment or a fine" (DE29 at 3). The defendant signed the bond on December 21, 2016, stating that he had carefully read and understood the bond and that he was obligated by law to comply with the bond's terms (DE29 at 4). In particular, "I promise to obey all conditions of this bond . . . [and] I am aware of the penalties and sanctions outlined in this bond for violations of the terms of the bond" (*id.*).

A corporate surety posted the bond on December 22, 2016, which the Court approved (DE29).

Willems appeared in Court on December 28, 2016 and January 6, 2017 for reports re counsel (DE36, DE49). Attorney Mauricio Padilla, Jr. filed a notice of appearance on January 5, 2017 (DE48).

On January 24, 2017, a federal grand jury returned an indictment charging Willems and six others with conspiracy to commit health care fraud, conspiracy to commit money laundering, and substantive money laundering (DE66). Willems was arraigned the following day (DE69).

Trial originally was set for March 20, 2017 (DE78) and then was continued to September 5, 2017 (DE117).

## Facts in Support of Motion to Revoke Bond

1. Willems is charged with conspiring with Kenneth Chatman, Joaquin Mendez, Michael Bonds, Fransesia Davis, Stefan Gatt, Laura Chatman and others known and unknown to commit health care fraud in connection with his work at Reflections Treatment Center. Willems served as medical director of Reflections from October 2015 to May 2016. During this period, Willems was employed by Deerfield Medical Center ("DMC"), and DMC contracted with Reflections to provide Willems' services as medical director.

2. DMC was located at 7552 Wiles Road, #B213, Coral Springs, Florida 33067, in Broward County, in the Southern District of Florida, and was owned by Richard Botero ("Botero"). DMC operated as a "doctors group" and provided medical services to patients at Reflections and other substance abuse treatment facilities, including facilities located in Palm Beach County. The medical services for substance abuse treatment patients included patient visits and evaluations,

providing prescriptions for bodily fluid testing, and providing prescriptions for drugs, including controlled substances such as Suboxone, Buprenorphine, and Clonazepam ("Klonopin"). Co-defendant Kenneth Chatman contracted with Botero and DMC to provide the aforementioned services.

3. Botero is not a physician and had prior felony convictions. Botero has no medical training and cannot prescribe controlled substances. Botero hired Willems based upon a referral from Anna Cuartas, a/k/a "JC," who had worked with Willems at Pompano Beach Pain Management ("PBPM"). Willems and the owners of PBPM were arrested for unlawful dispensing and distribution of prescription narcotics. As noted above, Willems remains on bond for those charges.

4. DMC also employed Cuartas, whose respiratory therapist license was revoked in 2001 after she falsified bills to make it appear that she was providing therapy services five days a week when she actually was only seeing the patient two days per week. Cuartas has no valid licenses to serve as a medical practitioner from the Florida Department of Health, although she portrayed herself to patients and employees as a "nurse." Cuartas also cannot prescribe controlled substances.

5. DMC was directly related to a substance abuse treatment facility known as "New Life Treatment Center" ("New Life"). "New Life" was located in the same building as DMC and utilized the same employees. "New Life" offered outpatient clinical treatment to patients and would refer all of its patients to DMC and its doctors to prescribe medication, therapy, and bodily fluid testing. Botero owned "New Life," DMC, and associated sober homes. The residents of Botero's sober homes would attend outpatient treatment at "New Life," and received medical

treatment and prescriptions from DMC. The relationship between the sober homes, DMC, and NLR, was vertically integrated, that is, the "supply chain" of addiction treatment patients kept each separate entity in business.

6. DMC and Botero also had a relationship with "Rising Hope Treatment Center" ("Rising Hope"), another substance abuse treatment facility in Broward County. Patients from "Rising Hope" would be referred to DMC and its doctors to prescribe medication, therapy, and bodily fluid testing.

7. Medical and osteopathic doctors play an essential role in substance abuse treatment. Without a doctor, patients at the substance abuse treatment centers cannot receive prescriptions for medications, treatment, or testing of urine, blood, or other bodily fluids. Prescription medications, treatment, and bodily fluid tests that are prescribed by the doctors can be billed to health plans by the substance abuse treatment centers.

8. One form of treatment for substance abuse involves the use of prescription controlled substances, that is, Buprenorphine HCl and Naloxone HCl separately or in combination, in order to wean addicts off of illegal opioids, including heroin. Brand names of these medications include Suboxone and Subutex (these drugs will be jointly referred to as "Buprenorphine"). Only licensed physicians can prescribe these medications. Because these drugs are Schedule III controlled substances, meaning that there is a strong potential for abuse, resulting in fatal and non-fatal overdoses, prescribing physicians also must have two registrations with the U.S. Drug Enforcement Administration. The first registration is the standard "DEA number," required to prescribe any controlled substance. The second registration is a "DEA X-number," which is granted to a limited number of physicians with valid "DEA numbers" and who complete a training

program on substance abuse treatment and fulfill other regulatory requirements.

9. Willems is an osteopathic doctor and, prior to his arrest, provided treatment to patients at Reflections. Willems saw patients, prescribed medication, and prescribed bodily fluid testing for Reflections patients.

10. As noted above, Willems is currently on bond for unlawful dispensing of controlled substances. Based upon that investigation, Willems "voluntarily surrendered" his DEA number to the Drug Enforcement Administration and he is barred from prescribing any controlled substances, including Buprenorphine. Despite this, Willems still has a license to practice medicine in Florida.

### Bond Violation #1:   Having Direct Contact with Witnesses

11. According to witness statements, Willems, Botero, and Cuartas would go to Reflections together to "treat" patients. At some point Cuartas stopped going to Reflections, and, instead, Botero would bring DMC's receptionist, Katherine Gonzalez, to Reflections. Witnesses have reported that Willems wrote prescriptions for controlled substances, particularly buprenorphine, a/k/a "suboxone," for Reflections patients despite not having a standard DEA number or a "DEA X-number," which is issued to physicians who have undergone special training regarding buprenorphine use and regulatory review. To prescribe buprenorphine properly, a person must be a validly licensed physician with both a standard DEA number and a DEA X-number.

12. Following his arrest, Willems told agents that he was working as a "physician extender" for a cooperating witness (CW) who is a licensed physician with a standard DEA number and a DEA X-number. The CW has stated under oath that he never authorized Willems to

prescribe any medications on his behalf and Willems was not, in fact, a "physician extender."

13. Botero, Cuartas, Gonzalez, the CW, and other employees of DMC are all witnesses to the charged offenses and, accordingly, the bond required Willems "avoid all contact with [them], except through counsel."

14. On February 22, 2017, Botero produced documents to the FBI in response to a subpoena and answered questions, and on March 2, 2017, the CW voluntarily produced documents to the FBI and was interviewed. From these events, the government has learned that, since Willems' bond was issued, he has continued to work at DMC and, specifically, with Botero, Gonzalez, and Cuartas. This conduct violates the Court's prohibition that the defendant "[a]void all contact with victims of or witnesses to the crimes charged, except through counsel" (DE29 at 2).

**Bond Violation #2:   Continuing to Provide Services to Substance Abuse Centers**

15. As noted above, the doctors from DMC serve as the medical team for "New Hope," which is a substance abuse treatment center. The documents provided by Botero and the CW, as well as interviews conducted after Willems' arrest show that, since his release on bond, Willems has continued to "provide services to sober homes or substance abuse treatment centers" in violation of the terms of release by seeing and treating the "New Hope" patients (*see* DE29 at 2).

16. Also, as noted above, the doctors from DMC provided medical services to "Rising Hope," a licensed substance abuse treatment provider. The CW voluntarily provided some notes from the treatment of "Rising Hope" patients at DMC, including an individual who will be referred to as "Patient #1." The note for Patient #1, which bears the electronic signature of Donald Willems dated January 24, 2017, states in relevant part, "Patient presents for initial visit referred

8

by Rising Hope Treatment Center. Pt has h/o [history of] Substance Abuse. His DOC [drug of choice] is Heroin about 2-3 gm daily IV. Pt. states had been on Opiod [*sic*] maintenance in the past, but recently he has been buying Suboxone off the street." The encounter date, that is, the date that Willems saw Patient #1, is noted as January 6, 2017, while Willems was on pretrial release. The note by Willems further states that Patient #1 is in a sober living facility, that is, a "sober home."

17. According to the notes from the CW, Willems also saw Patient #1 for a follow-up visit on January 11, 2017 for a "follow up visit." Again, the note states that the patient is residing in a sober home and is attending IOP [an intensive outpatient program, i.e., a substance abuse treatment program] three times per week.

18. Another note provided by the CW shows that Patient #1 returned for a follow-up visit on February 2, 2017. This patient note bears the electronic signature of the CW, but the CW informed the agents that another employee of DMC had altered the notes to remove Willems' electronic signature and replace it with the CW's electronic signature. The CW's statement is corroborated by the note, which states "Refill Zubsolv 5.7 po qd *if okay with [the CW]*." Obviously if the patient had been seen by the CW, he would not need to check with himself or refer to himself in the third person.

19. According to the treatment notes, Willems has seen multiple other sober home residents and substance abuse treatment center patients since his release on bond. Some of the more recent notes show the CW's signature in lieu of Willems' signature, but the encounters occurred on days of the week when the CW did not work at DMC.

20. This conduct violates the Court's prohibition that the defendant "shall not provide

9

services to sober homes or substance abuse treatment centers" (DE29 at 2).

### Bond Violation #3:   Committing Violations of Federal and State Law

21.   Lastly, as noted above, Willems no longer has a regular DEA number and never had a DEA X-number, so he is prohibited from prescribing any controlled substances, especially Buprenorphine.

22.   Title 21, United States Code, Section 841(a)(1) makes it a federal offense to distribute, dispense, or possess with intent to distribute or dispense a controlled substance.  Title 21, United States Code, Section 846 prohibits conspiracies to violate Section 841(a)(1).

23.   Buprenorphine is a Schedule III controlled substance.  Clonazepam, brand name "Klonopin," is a Schedule IV controlled substance.  Dextroamphetamine, brand name "Adderall," is a Schedule II controlled substance.

24.   Since the release of Willems on bond, agents have interviewed patients and employees of Reflections who reported that Willems, along with Botero and Cuartas, wrote prescriptions for controlled substances in the name of the CW, who never visited Reflections or saw their patients.

25.   On February 16, 2017 and February 22, 2017, Botero met with Special Agents and Task Force Officers of the FBI.  During each respective meeting, Botero told the Agents and Officers that he was the owner and supervisor of DMC.  Botero stated that he would accompany Willems to Reflections so that Willems would be supervised and would not "sign anything he shouldn't be signing."

26.   Botero was aware that Willems did not have a DEA number and was facing Florida state criminal charges related to the operation of a "pill mill."   Willems, under the direction of

Botero, treated patients at Reflections, ordered urine tests, and prescribed Buprenorphine and other controlled substances that were ultimately billed to health plans by co-defendant Chatman and Reflections.

27. Willems' practice of writing prescriptions in the name of the CW has continued since Willems has been released on bond. Interviews of patients who have been treated by Willems since his release on bond has revealed that the patients paid cash for appointments to see Willems and Cuartas at DMC and to receive prescriptions from Willems and Cuartas for controlled substances that contained the forged signature of the CW.

28. During a meeting with agents and the undersigned, Willems was asked about prescriptions in the name of the CW that were written for Reflections patients. Willems stated that he was acting as a "physician extender" (essentially, like a Physician's Assistant or Licensed Practical Nurse) for the CW and acting under the CW's supervision and approval in writing the prescriptions. On March 2, 2017, the CW was interviewed under oath and stated that he had never met Willems (he was unable even to identify him in a photo array), and never authorized Willems to prescribe medications using his DEA number or DEA X-number.

29. The patient treatment notes that the CW provided to agents on March 2, 2017 further show that Willems was continuing to prescribe Buprenorphine and other controlled substances to DMC patients using the CW's name after Willems was released on bond. For example, the patient notes for Patient #1's January 6, 2017 visit with Willems, referenced above, state "Established plan to begin Suboxone maintenance and taper off effectively. RX: Walgreens Subxoxone[ sic] 8mg QD [four times per day]." Willems electronically signed an addendum dated January 24, 2017 that reads: "Medication: Suboxone 8mg was switched to Zubsolv 5.7mg due to financial

11

difficulties." Zubsolv is another form of buprenorphine that is less expensive than suboxone. Zubsolv also is a controlled substance that cannot be prescribed without a DEA number and a DEA X-number.

30.     The patient notes for Patient #2's visits on January 6, 2017 and February 7, 2017 likewise show Willems prescribing Suboxone, Klonopin, and Adderall to Patient #2 while Willems on bond.

31.     In addition to Willems prescribing controlled substances to DMC patients, Willems was self-prescribing controlled substances using the CW's name and DEA number. In reviewing the list of prescriptions issued in the CW's name and DEA numbers, there are a series of prescriptions for Adderall for Donald Willems as a patient of the CW. As noted above, Adderall is a controlled substance and the CW has never even met Willems. Additionally, some of the prescriptions bear dates when the CW was not working at DMC. The most recent prescription is dated January 18, 2017, and the prescription was filled at CVS on February 6, 2017 while Willems was on bond. The original prescriptions have been obtained from CVS. All of the prescriptions bear a similar-looking signature, which does not match sample signatures obtained from the CW or prescriptions known to have been written by the CW.

32.     Based on the foregoing, there is probable cause to believe that Willems has violated Title 21, United States Code, Sections 841(a)(1) and 846, unlawfully distributing and dispensing controlled substances and conspiring to do the same.

## Conclusion

For the foregoing reasons, the United States submits that Donald Willems' order of release should be revoked because there is probable cause to believe that, while on bond, Donald Willems

has committed a federal felony, that is, the unauthorized dispensing and distribution of controlled substances, in violation of 21 U.S.C. § 841(a)(1), and conspiracy to do the same in violation of 21 U.S.C. § 846. Furthermore, there is clear and convincing evidence that the defendant has violated two other conditions of bond, that is, the prohibition on having direct contact with witnesses and the prohibition on providing services to substance abuse treatment centers and sober homes. There also is proof that the defendant remains a continuing risk to the safety of the community.

Accordingly, the United States respectfully requests that the Court issue the attached arrest warrant so that the defendant can be brought to court for a hearing on the motion to revoke bond.

Respectfully submitted,

BENJAMIN GREENBERG
ACTING UNITED STATES ATTORNEY

By: *[signature]*
A. Marie Villafaña
Assistant United States Attorney
Florida Bar No. 0018255
United States Attorney's Office
500 S. Australian Ave, Suite 400
West Palm Beach, FL 33401
Tel: 561-820-8711/Fax: 561-820-8777

cc:   Amanda Peters, U.S. Probation/Pretrial Services, Officer