UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.   17-80033-CR-MIDDLEBROOKS/BRANNON

UNITED STATES OF AMERICA

v.

LAURA CHATMAN,

      Defendant.
_____/

## FACTUAL PROFFER

      Defendant Laura Chatman, her counsel, and the United States agree that, had this case proceeded to trial, the United States would have proven the following facts beyond a reasonable doubt, and the following facts are true and correct and are sufficient to support a plea of guilty:

      1.    At all times relevant to the Indictment, substance abuse treatment was regulated under state and federal law. Pursuant to Florida's Marchman Act, appropriate substance abuse treatment needed to be "a professionally directed, deliberate, and planned regimen of services and interventions that are designed to reduce or eliminate the misuse of drugs and alcohol and promote a healthy, drug-free lifestyle." Fl. Stat. 397.311(a).

      2.    At all times relevant to the Indictment, the Marchman Act made it unlawful for any person or agency to act as a substance abuse service provider unless it was properly licensed. Fl. Stat. § 397.401(1); Fl. Admin. Code § 65D-300.003(1)(a).

      3.    To insure the legitimacy of substance abuse service providers and to protect the health and welfare of patients, all substance abuse service provider personnel who had contact with clients and all owners, directors, and chief financial officers, had to pass a "level 2 background screening," including "fingerprinting for statewide criminal history records checks through the Department of Law Enforcement, and national criminal history records checks through the Federal Bureau of Investigation." Fl. Stat. §§ 397.451(1)(a)(1), 435.04(1)(a). The Act also made it a criminal offense to operate or attempt to operate as a service provider with personnel who did not pass the background test. Fl. Stat. § 397.403(1)(e)(1); 397.461. Despite these laws, the substance abuse treatment centers mentioned in the Indictment, Journey to Recovery ("Journey") and Reflections Treatment Center ("Reflections"), applied for and received licenses and operated as service providers by hiding the fact that co-defendant Kenneth Chatman, who had a prior federal felony conviction, owned Journey and Reflections and was their Chief Operating Officer.

      4.    The Patient Protection and Affordable Care Act of 2010 ("ACA"), Pub. L. 111-148, and other federal laws expanded the availability of private insurance to pay for substance abuse treatment in several ways. First, the ACA allowed parents to maintain health insurance for

their children through their own insurance policies until the children reached the age of 26. Second, federal law mandated that substance abuse treatment and other mental health treatment must be covered and reimbursed by insurance policies in the manner and at the same levels as other medical treatment. Third, the ACA required insurance companies to cover individuals regardless of prior existing conditions. Fourth, annual and lifetime caps on coverage were removed. Fifth, the ACA created insurance exchanges that allowed uninsured individuals to apply for and obtain coverage from private insurers. The combination of these provisions created insurance coverage for patients and substance abuse treatment that had previously been excluded from coverage. Federal health care benefits programs were likewise expanded.

5. These federal laws created access to coverage through a number of avenues, including health plans sponsored by private employers, federal health care benefits programs, and health plans offered directly by private insurance companies. Private insurance companies administer health plans sponsored by private employers and governmental employers. Health plans sponsored by private employers are governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*, while those sponsored by governmental employers and certain others are exempted from ERISA's jurisdiction.

6. The Federal Employees Health Benefits Program ("FEHBP") provided medical benefits, items, and services to federal employees and their dependents, including substance abuse services. The United States Office of Personnel Management ("OPM") managed the FEHBP and contracted with various insurance companies to offer these benefits. FEHBP reimbursed those insurance companies out of government funds for the money the insurance companies paid out for medical benefits, items and services for federal employees and their dependents. BlueCross/BlueShield (BCBS) was one of the various insurance companies contracted by the Office of Personnel Management to offer medical benefits, items and services to federal employees under the FEHBP.

7. The National Railroad Passenger Corporation, doing business as Amtrak ("Amtrak"), was a private, for profit, Government corporation, that operated a nationwide system of passenger rail transportation. As part of its employee benefits package, Amtrak established employee health and welfare benefit plans to provide healthcare to their employees, including their spouses, domestic partners, and dependent children (collectively, "dependents").

8. Both ERISA and non-ERISA health benefit plans, including ACA plans, were offered or administered by private insurance companies, including Blue Cross/Blue Shield, Aetna, Cigna Behavioral Health, Cigna Health & Life Insurance Company, United Behavioral Health, and United Health Group.

9. All of these health benefit plans were "health care benefit programs," as defined in Title 18, United States Code, Section 24(b), that is, "public or private plans or contracts, affecting commerce, under which any medical benefit, item or service is provided to any individual."

10. Regardless of the type of plan held by a patient, the amount of coverage and terms and conditions of billing and payment were governed by the terms of the individual's insurance documents, and the insurance company administering the plan had the authority, responsibility,

and discretion to make coverage determinations and to process and make payments on claims.

11. Chapter 817 of the Florida Statutes, known as the "Florida Patient Brokering Act," made it a felony for any person, health care provider, or health care facility, including any licensed substance abuse service provider, to: "(a) Offer or pay any commission, bonus, rebate, kickback, or bribe, directly or indirectly, in cash or in kind, or engage in any split-fee arrangement, in any form whatsoever, to induce the referral of patients or patronage to or from a health care provider or health care facility; (b) Solicit or receive any commission, bonus, rebate, kickback, or bribe, directly or indirectly, in cash or in kind, or engage in any split-fee arrangement, in any form whatsoever, in return for referring patients or patronage to or from a health care provider or health care facility; (c) Solicit or receive any commission, bonus, rebate, kickback, or bribe, directly or indirectly, in cash or in kind, or engage in any split-fee arrangement, in any form whatsoever, in return for the acceptance or acknowledgement of treatment from a health care provider or health care facility; or (d) Aid, abet, advise, or otherwise participate in the conduct prohibited under paragraph (a), paragraph (b), or paragraph (c)." Fla. Stat. § 817.505.

12. Florida law also stated that it "shall constitute a material omission and insurance fraud . . . for any service provider, other than a hospital, to engage in a general business practice of billing amounts as its usual and customary charge, if such provider has agreed with the insured or intends to waive deductibles or copayments, or does not for any other reason intend to collect the total amount of such charge." Fla. Stat. § 817.234(7)(a).

13. Under state and federal law, health benefit plans were only responsible for claims for services that: (a) were "medically necessary," (b) were actually and lawfully rendered; (c) were provided by a properly licensed service provider, and (d) complied with the terms of the health care plan, including the obligation to pay co-insurance and deductibles.

14. Reflections was located at 5100 Coconut Creek Parkway, Margate, Florida, in Broward County, in the Southern District of Florida. Reflections purported to operate as a licensed "substance abuse service provider" or "treatment center," that is, it purportedly offered clinical treatment services for persons suffering from alcohol and drug addiction. As noted above, although co-defendant Kenneth Chatman had a federal criminal conviction that prohibited him from owning or operating a substance abuse service provider, Kenneth Chatman owned and served as the Chief Operating Officer of Reflections, including making all financial decisions. Co-defendant Kenneth Chatman and defendant Laura Chatman ("LChatman") agreed to place LChatman's name on Reflections documentation as the owner in an attempt to hide Kenneth Chatman's true ownership and control over the business.

15. Journey was located at 7451 S. Military Trail, Lake Worth, Florida, in Palm Beach County, in the Southern District of Florida. Journey purported to operate as a licensed "substance abuse service provider" or "treatment center," that is, it purportedly offered clinical treatment services for persons suffering from alcohol and drug addiction. As noted above, although co-defendant Kenneth Chatman had a federal criminal conviction that prohibited him from owning or operating a substance abuse service provider, Kenneth Chatman owned and served as the Chief Operating Officer of Journey, including making all financial decisions. Co-defendant Kenneth Chatman and defendant LChatman agreed to place LChatman's name on

Journey's documentation as the owner in an attempt to hide Kenneth Chatman's true ownership and control over the business.

16.     On January 18, 2014, defendant Laura Chatman submitted documentation to the Florida Department of Children and Families ("DCF") for the application of licensure for Reflections in Broward County, in the Southern District of Florida. DCF licensure was needed to provide substance abuse treatment and to bill insurance companies and, hence, the application was in connection with the delivery of health care services. Defendant Laura Chatman listed herself as the sole owner of Reflections and concealed the fact that co-defendant Kenneth Chatman, a convicted felon, was an owner and director of Reflections. Laura Chatman signed and submitted these documents to DCF knowing that they were false and fraudulent, knowing that the failure to disclose Kenneth Chatman's role was material, and knowing that DCF would rely upon her representations in making a decision regarding licensure.

17.     Defendant Laura Chatman along with co-defendant Barry Gregory ("Gregory") assisted Laura Chatman in signing and submitting documents to DCF and other accrediting agencies in order to conceal Kenneth Chatman's ownership and management of Reflections. Laura Chatman appeared at Reflections for audits and inspections by DCF and other accrediting agencies to make it seem as though Laura Chatman was the sole owner and Chief Executive Officer and Chief Financial Officer of Reflections knowing that DCF and the other accrediting agencies would rely upon Laura Chatman's representation that she was the owner, CEO, and CFO in making their decisions. Defendant Laura Chatman also file corporate documents and opened bank accounts in the name of Reflections to allow Kenneth Chatman and other members of the conspiracy to deposit proceeds from the health care fraud scheme and to conduct transactions meant to promote the health care fraud scheme.

18.     On September 23, 2016, defendant Laura Chatman submitted documentation to DCF for the application of licensure for Journey in Palm Beach County, in the Southern District of Florida. DCF licensure was needed to provide substance abuse treatment and to bill insurance companies and, hence, the application was in connection with the delivery of health care services. Defendant Laura Chatman listed herself as the sole owner of Journey and concealed the fact that co-defendant Kenneth Chatman, a convicted felon, was an owner and director of Reflections. Laura Chatman signed and submitted these documents to DCF knowing that they were false and fraudulent, knowing that the failure to disclose Kenneth Chatman's role was material, and knowing that DCF would rely upon her representations in making a decision regarding licensure.

19.     Defendant Laura Chatman along with co-defendant Gregory assisted Laura Chatman in signing and submitted documents to DCF and other accrediting agencies in order to conceal Kenneth Chatman's ownership and management of Journey. Defendant Laura Chatman appeared at Journey for audits and inspections by DCF and other accrediting agencies to make it seem as though Laura Chatman was the sole owner and Chief Executive Officer and Chief Financial Officer of Journey knowing that DCF and the other accrediting agencies would rely upon Laura Chatman's representation that she was the owner, CEO, and CFO in making their decisions. Defendant Laura Chatman also file corporate documents and opened bank accounts in the name of Journey to allow Kenneth Chatman and other members of the conspiracy to deposit proceeds from the health care fraud scheme and to conduct transactions meant to promote the

health care fraud scheme.

20. Laura Chatman wrote checks on the bank accounts that received the proceeds of the health care fraud scheme, including checks made payable to owners of "sober homes," also known as "recovery residences," that were used to pay kickbacks and bribes for referring the residents of the sober homes with insurance to Reflections and Journey for treatment.

21. During the period that Laura Chatman served as the nominee owner of Reflections and Journey, the companies received between $3,500,000 and $9,500,000 from insurance companies as reimbursements for fraudulent claims submitted by Reflections and Journey.

WIFREDO A. FERRER
UNITED STATES ATTORNEY

Date: 3/15/2017

By: _____
A. MARIE VILLAFAÑA
ASSISTANT UNITED STATES ATTORNEY

Date: _____

By: _____
CHRISTOPHER G. LYONS, ESQ.
ATTORNEY FOR DEFENDANT

Date: 3·15·17

By: _____
LAURA CHATMAN, DEFENDANT