IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Case No. 17-cr-80013-MIDDLEBROOKS

UNITED STATES OF AMERICA,

    Plaintiff,

v.

KENNETH CHATMAN,

    Defendant.

---

### DEFENDANT KENNETH CHATMAN'S
### MOTION FOR VARIANCE
### FROM THE SENTENCING GUIDELINES

---

Defendant Kenneth Chatman moves for a variance from the United States Sentencing Guidelines and states as follows:

### INTRODUCTION

"The United States Sentencing Guidelines do not require a judge to leave compassion and common sense at the door to the courtroom." *U.S. v. Johnson,* 964 F.2d 124, 125 (2nd Cir. 1992). To the contrary, "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. U.S.*, 518 U.S. 81, 113 (1996).

Separating the individual that is Kenneth Chatman from his failings is not an easy task. On one hand, there is Kenny's offense conduct as portrayed in the PSIR which is both criminal and inexcusable. This stands in sharp contrast and at the opposite end of the spectrum to the man

friends and family describe as being consistently compassionate, caring, giving, kind and loving, among so many other expressions. Though depicted as an oppressor by the Probation Department, there is another side to Kenny that is not represented in the PSIR, a human side he hopes this Court will recognize. Kenny Chatman respectfully requests a variant sentence that balances his criminal acts with the good he has achieved in the hope that he is allowed to re-enter society, continue to serve those around him and eventually be reunited with his family.

## GOVERNING LAW

Every defendant, including Kenneth, is entitled to a fair and just sentence that takes into account the totality of his individual circumstances. *Kimbrough v. U.S.*, 552 U.S. 85, 101 (2007) (The overarching command of Section 3553(a) is the Parsimony Clause that "instruct[s] district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing . . .."); *U.S. v. Jones*, 460 F.3d 191, 195 (2nd Cir. 2006) (Judges may give "consideration [to] the judge's own sense of what is a fair and just sentence under all the circumstances.").

The Supreme Court fundamentally altered the federal sentencing landscape in *U.S. v. Booker,* 543 U.S. 220 (2005), when it held that mandatory application of the Sentencing Guidelines was unconstitutional. Freed from the rigid, formalistic framework that existed under the Guidelines, District Courts are "no longer . . . tied to the sentencing range indicated in the Guidelines." *Cunningham v. California,* 549 U.S. 270, 286 (2007). Instead, courts are "obliged to 'take account of' that range along with the sentencing goals enumerated in the Sentencing Reform Act." *Id.* The Guidelines are simply advisory. *Booker* at 245-46.

Following *Booker*, a District Court must impose a sentence in accordance with the various Section 3553(a) factors and may no longer presume that a sentence calculated pursuant

to the Guidelines is appropriate or reasonable. *Gall v. U.S.,* 552 U.S. 38, 49 (2007). *See also Nelson v. U.S.,* 550 U.S. 350, 352 (2009) ("The Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable."). The Guidelines are simply the "starting point and the initial benchmark." *Gall* at 49. Indeed, the correctly calculated Guidelines range is only one factor for a court to consider in imposing a sentence; a court may impose a different sentence if other factors under Section 3553(a) suggest that the Guidelines range is inappropriate. *Booker* at 245.

Consequently, in the Eleventh Circuit, District Courts are not to treat the Guidelines as presumptively reasonable. "Although the Sentencing Guidelines serve as a 'starting point and the initial benchmark,' the district court has the authority, based on its 'individualized assessment' of the facts, to weigh the factors listed in section 3553(a) and fashion a sentence outside the guidelines. As long as the district court provides 'justification . . . sufficiently compelling to support the degree of the variance' from the guidelines range and the term imposed adequately achieves 'the purposes of sentencing stated in § 3553(a),' Gall requires that we affirm. The Supreme Court made clear that 'a major departure [from the Guidelines range] should be supported by a more significant justification than a minor one.'" *U.S. v. Anderson*, 267 Fed. Appx. 847, 850 (11th Cir. Ga. 2008) (citations omitted). *See also U.S. v. Hunt*, 459 F.3d 1180, 1185 (11th Cir. 2006) (Courts "may determine, on a case-by-case basis, the weight to give the Guidelines, so long as that determination is made with reference to the remaining Section 3553(a) factors that the court must also consider in calculating the defendant's sentence.").

A court must impose a sentence "sufficient, *but not greater than necessary,*" to comply with the purposes of punishment. 18 U.S.C. § 3553(a) (emphasis added). In particular, Section 3553(a) provides that in determining the sentence to be imposed, a court shall consider:

3

1. the nature and circumstances of the offense and the history and characteristics of the defendant;

2. the need for the sentence imposed:

   A. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   B. to afford adequate deterrence to criminal conduct;

   C. to protect the public from further crimes of the defendant; and

   D. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3. the kinds of sentences available;

4. the kinds of sentence and the sentencing range established for [in the Sentencing Guidelines];

5. any pertinent policy statement [issued by the Sentencing Commission];

6. the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

7. the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

A court is not limited by the information it may consider at sentencing concerning the background, character, and conduct of a person convicted of an offense. *Irizarry v. U.S.,* 553 U.S. 708, 715 (2008) ("[T]here is no longer a limit . . . on the variances from the Guidelines ranges that a district court may find justified under the sentencing factors set forth in [§3553(a)]."); *U.S. v. Hooks,* 551 F.3d 1205, 1217 (10th Cir. 2009) (citation omitted) ("With few

limitations, a court has almost unlimited discretion in determining what information it will hear and rely upon in imposing a sentence under the advisory sentencing guidelines.").

"When a factor is not fully considered by the Sentencing Guidelines, 'the court *must*, after considering the 'structure and theory of both relevant individual guidelines and the Guidelines taken as a whole,' . . . decide whether it is sufficient to take the case out of the Guideline's heartland.' . . . A factor may be considered in the aggregate if it is 'atypical,' even though it may not be sufficient, in and of itself, to support a departure." *U.S. v. Jones*, 158 F.3d 492, 498-499 (10th Cir. 1998) (emphasis added) (citation omitted).

The Eleventh Circuit recognizes that there are "many instances where the Guidelines range will not yield a reasonable sentence." *Hunt* at 1184. Accordingly, the Eleventh Circuit has repeatedly affirmed below guideline sentences after *Booker. See, e.g., U.S. v. Anderson*, 267 Fed. Appx. 847 (11th Cir. 2008) (affirming sentence of probation with home-confinement for white collar defendant where Guidelines were 18 to 24 months and prosecutor requested 18 month sentence); *U.S. v. McBride,* 511 F.3d 1293 (11th Cir. 2007) (affirming variance from 151 to 188 months to 84 months in child pornography case); *U.S v. Clay*, 483 F.3d 739 (11th Cir. 2007) (affirming 60 month sentence even though the Guidelines were 188 to 235 months); *U.S.* v. Mathis, 186 Fed. Appx. 971 (11th Cir. 2006) (affirming a 36 month sentence in an extortion and obstruction case despite a Guidelines of 57 to 71 months); *U.S. v. Gray*, 453 F.3d 1323 (11th Cir. 2006) (affirming a 72 month sentence even though Guidelines was 151 to 188 months); *U.S. v. Halsema*, 180 Fed. Appx. 103 (11th Cir. 2006) (affirming 24 month sentence even though Guidelines were 57 to 71 months); and *U.S. v. Williams*, 435 F.3d 1350 (11th Cir. 2006) (90 month sentence upheld despite Guidelines of 188 to 235 months).

## THE GUIDELINE CALCULATION

The Probation Officer asserts pursuant to Paragraph 256 of the Presentence Investigation Report, a total offense level of 43 and a Criminal History Category of III such that the Guideline imprisonment range should be life. The defense maintains that the proper guideline in this case is the one that is jointly recommended in the plea agreement (D.E. 194) and calls for an adjusted offense level of 33. The defense disputes the Probation Department's finding of a Criminal History Category III and argues that the appropriate Criminal History Category for Kenny is a Category II (D.E. 194) which results in a 151-188 month sentencing range.

## THE SECTION 3553(a) FACTORS

**History and Characteristics of the Defendant**

Kenneth Chatman was born on June 21, 1970 in Brooklyn, New York to the union of his father, Kenneth and mother, Denise. His parents eventually divorced when he was 14 which heralded a rough period in his upbringing as he got caught up in his mother's resentment over the closer relationship he had with his father. Kenny weathered the storm as a teenager, eventually grew up and married Laura Chatman, nee: McCrodden on November 20, 1998. He and Laura adopted a child and had three more biological children together, who all now range in age from 7 to 20 years old. By all accounts, Kenny was an incredible father who is described as loving and compassionate toward the kids, a loving uncle during bad times and a son who has done more good in this world than bad. Kenny has donated his time helping children in a local orphanage, has participated in charitable activities at his church, The Calvary Chapel where he served as a board member and donated his time and support to a not-for-profit organization that helps unmarried, pregnant mothers get on their feet. Kenny also has contributed to other charities that he could not directly participate in. Kenny suffers from a seizure disorder and has abused alcohol

and drugs in response to stress. Not long after his arrest, Kenny accepted responsibility for his actions and immediately attempted to rectify the wrongs he had committed.

The outpouring of support for Kenneth in the form of letters and emails from family, friends and colleagues is a testament to the incredible person that is Kenneth. Some of the testimonials of Kenneth's character are attached as Composite Exhibit A and are highlighted as follows:

- **James Woods** (Kenneth's former employee of two years, a treatment therapist and current friend) Kenneth was well liked by his clients and always displayed tremendous care, compassion and consideration to the clients and their families. He was very generous and went out of his way to ensure that they were treated with dignity and respect. Kenny is a devoted family man and a man of faith. He is also involved with many community and service based organizations. He is involved with the Boys & Girls Club providing financial donations, tee shirts and shoes to the kids. He is also involved with the Kids in Distress organization providing donations, Christmas gifts and Miami Heat tickets to the children. He was a sponsor for the You Moms organization, which provides pampers, clothing and baby food to those in need and Father & Sons Football League. He has also made donations to the YMCA of Broward County.

- **Karriem Slade** (a friend of over 30 years) I want to convey some good will on behalf of him [Kenny] to demonstrate the character of the friend, brother, son and father he has since become to others in his life. After I found myself having to move out of my home at an early age, Kenneth Chatman convinced his dad to take a chance on me and to give me room and board. Consequently, as we grew up I inherited the benefit of a lifelong friend as well as an extended family. That is how we became brothers. I have come to learn that

Kenny is remorseful and fully acknowledges his illegal acts and the harm he has caused to many.

- **Lardrell Climer** (a friend of over 25 years) I would like to state that this husband, father, son and brother is one of the most loving and compassionate people in my life; without Kenny in my life I wouldn't be the man I am today. Kenneth has done so much good in his life I truly believe he deserves some mercy for his mistakes.

- **Venus Prince-Richardson** (Kenny's aunt) Kenny is the type of person who would give you the shirt off his back. He is a compassionate father of four wonderful children which he would absolutely lay down his own life [rather] than see any harm come to them. He has strong ties to his community as well as his church. Kenny has done many charitable events for so many underprivileged in his community. Going to prison can't punish him anymore than the remorse he feels and the pain he has caused his family. I really needed to tell you a little something about Kenny whom I've loved and cherished.

- **Tahisha Chatman** (Kenny's younger sister) When my son's father was absent in his life, years ago, my brother helped me keep things in order like paying the mortgage and sending money for clothes and food. Every summer he would send for all of his nephews to spend weeks at his house to allow the cousins to spend time and bond since they were all in different states. I know he has donated toys to his local children's orphanage. Is Kenneth Chatman perfect? No. is he a monster, absolutely not.

- **Kenneth and Denise Chatman** (Kenny's father and mother) We've known him his entire life and he is a beautiful, caring and strong willed individual and we know he has done more good in this world than bad. He is a god fearing man with strong ties to the

8

community and most of all [to] his family. We're just saying that there [is] so much more to Kenneth Chatman than what you see.

- **Eric Gateau** (Kenny's brother-in-law) I am a New York City Corrections Officer currently working at the New York City Department of Corrections. I am the brother-in-law of Kenneth Chatman. I have known Kenneth for 4 ½ years. During that time, I have known Kenneth to be kind, giving and a loving person. Kenneth has a strong family oriented background; he has always tried to do the right thing. How he ever got into this situation is so incomprehensible to me as this is not the man I have known throughout the years.

- **Abdul Chatman (Kenny's younger brother)** Kenny loves to make people laugh and he does it well. He is also a very compassionate and emotional person. Like my father, the norm for him is to put others first. As a teenager, Kenny always worked two jobs. Every time he got a job he always found a way to also get me and our friends the same job. He taught me to work hard for what I wanted including teaching me everything about selling cars. Kenny always chose to work hard and not break the law for money. That is the Kenny I know. As a result, this situation has come as a surprise to my entire family. I love my brother more than I ever thought possible, not because he needs me to but because I need to.

**Other Considerations**

In addition to all of the foregoing, including examples of good character and acts of charity, it should be noted that Kenneth decided to plead guilty, accept responsibility and immediately attempted to right the wrong that his actions caused. He pled guilty in part to also spare his wife the risk of serving more time and further perpetuating the damage to his children

9

which he feels fully responsible for. In addition, Kenny is also poised to make a substantial restitution payment as soon his total restitution responsibility is calculated and finalized. Approximately four years ago, Kenny started having seizures which appear to be induced by stress. He has continued to suffer repeated seizures in jail which are being helped by the use of medication. Kenny and has also been the victim of at least one brutal attack while in custody which is a scene that will likely continue to play out after he is sentenced as a sex offender and moved to a Bureau of Prisons facility for what could be an extend period of incarceration. It is requested that any sentence imposed contemplates Kenny's medical condition and his hope to be housed close enough to his family to permit periodic visitation.

## CONCLUSION

Appropriately calculated and respecting the joint recommendation of the parties in their plea agreement, the United States Sentencing Guidelines provide for a Total Offense Level 33, CHC II which corresponds to a range of 151-188 months incarceration. Compassion, common sense and the law justify the Court imposing a sentence that represents a balance between Kenneth's criminal actions and the achievements and contributions he has made to society. In that regard, a sentence below the United States Sentencing Guidelines as suggested by the Probation Department and at the low end of the jointly recommended Guideline range would be sufficient but not greater than necessary to fulfill the purposes set forth in § 3553(a)(2)(A-D) which include the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, the protection of the public from further crimes of the defendant and the need to provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner. *United States v. McBride*, 511 F.3d 1293,

1296-97 (11th Cir. 2007).

Respectfully submitted this 10th day of May, 2017.

                                              s/ Ronald Gainor
                                              Ronald Gainor, Esq.
                                              Florida Bar No. 606960
                                              GAINOR & DONNER
                                              3250 Mary Street
                                              Suite 405
                                              Miami, Florida 33133
                                              O: 305-537-2000
                                              C: 305-206-2008
                                              F: 305-537-2001
                                              Email: gainorlaw@gmail.com
                                              Counsel for Defendant
                                              Kenneth Chatman

## CERTIFICATE OF SERVICE

     I hereby certify that on this 10th day of May, 2017, I electronically filed the foregoing Motion with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all interested parties.

                                              s/ Ronald Gainor