**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.   17-80013-CR-MIDDLEBROOKS/BRANNON**

**UNITED STATES OF AMERICA**

**v.**

**LAURA CHATMAN,**

   **Defendant.**
_____/

**RESPONSE TO DEFENDANT'S OBJECTIONS TO THE PRESENTENCE**
**INVESTIGATION REPORT (DE195) AND REQUEST FOR A**
**DEPARTURE/VARIANCE (DE201)**

The United States of America, by and through the undersigned Assistant United States Attorney, hereby files this Response to the Objections to the Presentence Investigation Report ("PSI") filed by defendant Laura Chatman (DE195) as well as her Request for Variance from the Sentencing Guidelines (DE201).   Defendant Chatman ("Chatman") raises three objections to the Probation Officer's calculation of her advisory sentencing guidelines – she objects to the enhancements for risk of death or serious bodily injury and vulnerable victim, and she objects to the failure to receive a two-level minor role reduction.   The United States agrees that the two enhancements should not apply, but agrees with the Probation Office that a role reduction is inappropriate.   Chatman also asks the Court to vary downward from the sentencing guidelines based on a number of factors.   The United States addresses the § 3553(a) factors and their application to the defendant and makes its recommendation for a reasonable sentence.

   1.   The Vulnerable Victim and Risk of Death/Serious Bodily Injury Enhancements

The United States is not asking the Court to apply the vulnerable victim and risk of

1

death/serious bodily injury enhancements.   Although the defendant asserts that these enhancements were excluded pursuant to the Plea Agreement, but the Agreement actually states that there "are no further agreements regarding the calculation of the advisory guideline range." (DE138 at ¶ 7(f).)   While Mrs. Chatman's pleadings significantly understate her involvement with the business, it is true that her lack of participation in the treatment of the patients and her failure to supervise and monitor the goings-on at Reflections and Journey make these two enhancements inapplicable to her.

For the "risk of death/serious bodily injury" enhancement "to apply, the risk of bodily injury [or death] must have been known to the defendant or, if unknown to the defendant, the risk of bodily injury [or death] must have been the 'type of risk that is obvious to a reasonable person and for which disregard of said risk represents a gross deviation from what a reasonable person would do.'"   *United States v. Wolosz*, 485 F. App'x 509, 514 (2d Cir. 2012) (quoting *United States v. Lucien*, 347 F.3d 45, 56–57 (2d Cir. 2003)).   Using a nominee owner to open a substance abuse treatment facility and obtain a license does not, in itself, create a risk of death or serious bodily injury.   Rather, it was the criminally substandard care and Mr. Chatman's overt marketing of the facilities as places where patients could continue to use drugs, his distribution of illegal drugs to patients, and his withholding of patients' suboxone prescriptions that created those risks.   The United States is not prepared to present evidence that Mrs. Chatman knew of or participated in those aspects of the criminal conspiracy.

Likewise, with regard to the "vulnerable victim" enhancement.   Mrs. Chatman's criminal conduct made harm to insurance companies reasonably foreseeable, rather than harm to the patients at Reflections and Journey.   The insurance companies do not qualify as "vulnerable

victims" under the Guidelines, so the United States is not prepared to present evidence to support the application of the "vulnerable victim" enhancement as to this defendant.

2.  <u>Role in the Offense</u>

Chatman asks the Court to grant a two-level reduction pursuant to U.S.S.G. § 3B1.2 arguing that she was a minor participant in her crimes of conviction.  Considering only the conduct for which she is being held responsible, Chatman was not a minor participant.  The guidelines further instruct that, where a defendant has been allowed to plead to less than her full criminal conduct, a mitigating role reduction is unwarranted.

Section 3B1.2 provides that a defendant's offense level should be decreased by two levels if she "was a minor participant in any criminal activity."  U.S.S.G. § 3B1.2.  The "defendant bears the burden of establishing his minor role by a preponderance of the evidence," and a district court's decision regarding a role reduction is reversed only in a case of "clear error," that is, where the Court of Appeals is "left with a definite and firm conviction that a mistake has been committed."  *United States v. Monzo*, 825 F.3d 1343, 1345 (11th Cir. 2017) (extensive citations omitted).

The Eleventh Circuit has long held that, when deciding whether to grant a defendant's request for a role reduction, the Court must assess "first, the defendant's role in the relevant conduct for which [he] has been held accountable at sentencing, and, second, [his] role as compared to that of other participants in [his] relevant conduct."  *Id.* at 1346 (quoting *United States v. DeVaron*, 175 F.3d 930, 940 (11th Cir. 1999) (*en banc*)).  Whether to grant a mitigating role reduction "is based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case."  *United States v. Pierre*, 825 F.3d 1183,

1196 (11th Cir. 2016) (quoting U.S.S.G. § 3B1.2, Appl. N. 3(C)).   Chatman's claim to be a minor participant fails on both prongs.

### 1.   The Defendant's Role in Her Relevant Conduct

In recognition of Chatman's cooperation in the investigation of her husband, Chatman was allowed to plead guilty only to the two false statements charges and her plea agreement loss recommendations were limited to *actual losses* incurred based upon a portion of the fraudulent billings submitted by Reflections Treatment Center to insurance companies.   At the time that the plea agreement was prepared, none of the Journey to Recovery reimbursements had been obtained and the last six months of Reflections' reimbursements had not been received.   Chatman was criminally responsible for *all* of those actual and intended losses.   Without Chatman's false statements to the Florida Department of Children and Families – claiming to be the sole owner and chief financial officer of Reflections and Journey – the entities could not have obtained DCF licenses.   It was unlawful to act as a substance abuse service provider without a proper license (*see* DE139 at ¶ 2).   Furthermore, health benefit plans only had to reimburse claims for services "provided by a properly licensed service provider." (*id.* at ¶ 13).   Thus, *all* of the losses are attributable to Chatman because without her false statements the insurance companies would not have made any payments.

Pursuant to the plea agreement, Chatman has not been held responsible for any of the losses incurred by the fraudulent tests run by the clinical laboratories, nor has she been held responsible for the other criminal activity that was occurring at the clinics and sober homes owned by her husband, including fatal and non-fatal patient overdoses, sex trafficking, and withholding of prescription medications to punish patients.   Chatman also has not been held responsible for the

money laundering (which would have called for a two-level enhancement), even though the bank accounts used to launder the funds could not have been opened without Chatman.

Instead, Chatman was allowed to plead guilty to two false statement counts, which limited Chatman's sentencing exposure to 10 years' imprisonment.   The money laundering charges were dismissed, which obviated the two-level enhancement for money laundering and reduced Chatman's statutory maximum from a total of 180 years' imprisonment.   By using actual losses rather than intended losses for Reflections and Journey, the plea agreement reduced Chatman's guideline range by two levels.

Accordingly, Chatman's assigned offense level has been significantly reduced already. The Commentary to U.S.S.G. § 3B1.2 states that where "a defendant has received a lower offense level by virtue of being convicted of an offense significantly less serious than warranted by his actual criminal conduct, a reduction for a mitigating role under this section ordinarily is not warranted because such defendant is not substantially less culpable than a defendant whose only conduct involved the less serious offense."   U.S.S.G. § 3B1.2, Appl. N. 3(B).

## 2.   Comparing the Defendant to the Other Participants

To receive her requested two-level reduction, Chatman also must come forward with evidence showing that she was "less culpable than *most* other participants in the criminal activity." U.S.S.G. § 3B1.2, Appl. N. 4 & 5.   And, even if the Court were to determine that Chatman's "role may have been less than the other participants engaged in the scheme, [s]he [is] 'not automatically entitled to a minor role adjustment' for that reason" because it is possible that there are no minor or minimal participants in the scheme.   *United States v. Butler*, 635 F. App'x 585, 594 (11th Cir. 2015) (quoting *DeVaron*, 175 F.3d at 944).

5

Chatman's motion argues that she should receive the reduction because she "did not understand the scope and structure of the criminal activity," and because she was not required to plead guilty to the health care fraud conspiracy.

First, Chatman's false statements to DCF and the Florida Department of State that she was the owner, president, chief executive officer, and chief financial officer are what allowed this fraud to occur.   Making those false statements and now seeking a benefit because she did not bother to find out what was occurring at the businesses that she pretended to own, manage, and operate turns the role reduction on its head.

Second, as noted above, being allowed to plead only to the false statement offenses was a benefit that Chatman received because of her cooperation.   The health care fraud could not have happened without Chatman's false statements.

Third, Chatman overstates her lack of knowledge and participation.   Before opening Reflections, Chatman and her husband had previously worked and partly owned another substance abuse treatment facility where kickbacks, bribes, and poor patient treatment were occurring. After personal relationships at that facility were strained, the Chatmans opened Reflections, with Mrs. Chatman filing false information with the Florida Department of State, DCF, banks, and other entities.   Once opened, Chatman repeatedly made representations to DCF – in applications for licensure, to change licensure, to move locations, and in notification letters regarding changes to the medical and clinical directors.   Chatman also would appear at the clinics for key events, including DCF inspections, audits and inspections conducted by other certifying authorities, and when Reflections was inspected by DCF following the death of a patient.   At all of these events, Chatman covered up her husband's ownership and management of the entities and allowed the

fraud to continue unabated.[1]  Chatman denies that she hired Barry Gregory as the clinical director, but, in an interview, co-defendant Joaquin Mendez identified Chatman as the person who hired him to serve as medical director.  It is quite likely that Kenneth Chatman instigated Mendez's hiring and Laura Chatman simply went along with it or signed papers to that effect, but the charade was a critical element of the fraud conspiracy.

Furthermore, to succeed, Chatman must come forward with evidence that she was less culpable than most other participants.  Looking through the lens of the entire fraud scheme, this would include low-level employees whose job was solely to drive residents back and forth from the sober homes to Reflections; receptionists and billing staff; patients who were recruited to become "house managers"; patients who shared controlled substance medications when their own was withheld; and patients who forged signatures of other patients on sign-in sheets so that insurance could be billed.  Chatman was not less culpable than those persons.  Even if we focus only on the crimes of conviction – making false statements to DCF, Chatman actually was the *most* culpable of the participants in those offenses because she is the person who actually made the false statements.

Finally, Chatman asks the Court to consider the small amount of money that she was paid – "approximately $3,000/month for being the nominee owner" (DE195 at 6).  But these "salary" payments were part of the scheme to defraud by making it appear that Chatman was actually working at the clinic when she was merely allowing Reflections and Journey to use her name to obfuscate Kenneth Chatman's ownership and control.  Chatman also was living in expensive

---

[1] The Court also can consider the extent of the press coverage regarding criminal activity and deficient treatment at Reflections prior to Kenneth Chatman's arrest in evaluating Laura Chatman's assertions that she was "unaware" of what was going on there.

homes and driving expensive cars funded by the fraud scheme.   Chatman knew that their expensive home was allegedly "owned" by Reflections so that the Chatmans could avoid taxes. Chatman is not a person "who received little personal gain relative to the loss amount" as described in U.S.S.G. § 3B1.2 comment. (n. 3(A)).

Since Chatman cannot bear the burden of proving by a preponderance of the evidence that she was less culpable than most other participants, the United States respectfully requests that the Court overrule the defendant's objection regarding role in the offense.

## THE APPLICATION OF THE FACTORS SET FORTH IN 18 U.S.C. § 3553 CALL FOR A SENTENCE OF IMPRISONMENT WITHIN THE ADVISORY GUIDELINE RANGE

If the Court sustains Chatman's objections to the vulnerable victim and reckless risk of death enhancements and overrules her objection seeking a role reduction, the advisory guideline range will be 46 to 57 months' imprisonment (23/I).   Defendant Chatman has filed a motion for a downward variance based upon some of the factors set forth in 18 U.S.C. § 3553(a).   While Chatman's culpability is less than that of her husband, a significant sentence is still necessary to reflect all of the § 3553(a) factors and the stated purposes of sentencing.   Accordingly, the United States respectfully requests that the Court impose a sentence within the advisory guideline range.

Last month, the Supreme Court discussed in detail the breadth of a sentencing court's discretion and how the factors in Section 3553(a) should be applied.   *See Dean v. United States*, ___ U.S. ___, 137 S. Ct. 1170 (2017).   "Sentencing courts have long enjoyed discretion in the sort of information they may consider when setting an appropriate sentence.   This durable tradition remains, even as federal laws have required sentencing courts to evaluate certain factors when exercising their discretion."   *Dean*, 137 S. Ct. at 1175 (citing *Pepper v. United States*, 562 U.S. 476, 487-89 (2011)).

8

When fashioning a sentence, the sentencing court is to "take into account 'the nature and circumstances of the offense and the history and characteristics of the defendant,' as well as 'the need for the sentencing imposed' to serve the four overarching aims of sentencing.[2]   The court must also consider the pertinent guidelines and policies adopted by the Sentencing Commission." *Id.* (quoting 18 U.S.C. § 3553(a) and citing *Gall v. United States*, 552 U.S. 38, 50 n.6 (2007)). Chatman's motion addresses *only* the history and characteristics of the defendant and ignores all of the other factors in § 3553(a), and never addresses the four purposes of the sentencing.

Turning to the statutory factors, and using the framework of the Supreme Court and the Eleventh Circuit, the Court has wide discretion in determining what term of imprisonment is a reasonable one below the statutory maximum term of ten years' imprisonment.

### 1.  The Nature and Circumstances of the Offenses

As set forth in the Indictment, the Factual Proffer, and the PSI, Chatman was involved in a large-scale health care fraud conspiracy and money laundering, and she was convicted of making false statements to DCF to allow the fraud to occur.   While Chatman herself was not involved in the most egregious parts of the health care fraud, the true circumstances of this case must be considered.   Health care fraud is often considered a simple "white collar" offense, with Medicare or, at most, the taxpaying public, its only victim.   As shown in the victim impact statements that have been submitted and will be submitted in advance of the sentencing and the in-court victim impact statements that will be made, Chatman's crime resulted in harm not normally encountered in health care fraud cases.   Chatman herself appeared at inspections and audits, including one that

---

[2]  The four identified purposes of sentencing are "just punishment, deterrence, protection of the public, and rehabilitation."   *Dean*, 137 S. Ct. at 1175.

occurred shortly after the overdose death of one of the patients, to allow the fraud to continue. Patients died, leaving families mourning for their loved ones.   Desperate parents are left with feelings of guilt because they believed that they had entrusted their children to people, including Chatman, who would look out for their well-being.   Chatman's refrain that she did not know what was happening at the clinic and just did what her husband told her to do don't diminish the fact that her criminal activity allowed these events to occur.   This factor weighs heavily in favor of an above-guideline sentence.

### 2.   The History and Characteristics of the Defendant.

Chatman has no criminal history and by all accounts is a caring mother.   The guidelines as calculated take into account that Chatman has no prior convictions, but this factor likely weighs in favor of a below-guideline sentence.

### 3.   Need to Reflect Seriousness/Promote Respect/Provide Just Punishment

The need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment weigh in favor of a guideline sentence.   For the past few years there has been a virtually industry-wide scheme to defraud insurance companies at the expense of patient health and safety.   Laws that were put in place to address the heroin and opioid crisis – namely, the Affordable Care Act and the Mental Health Parity and Addiction Equity Act – which made substance abuse treatment affordable and available to virtually everyone – were, instead, turned into a treasure trove for unscrupulous sober home owners, treatment facility providers, and labs.   Above and beyond the harm to individual patients and family that was discussed above, the effect on the insurance industry – and, hence, on persons and businesses trying to buy insurance – has been devastating.   One measurable effect was Cigna's decision to

10

leave the Florida ACA insurance exchange because of "an exponential increase in fraudulent and abusive" substance abuse treatment practices.   Looking at the industry as a whole, this fraud scheme has resulted in fatal and non-fatal overdoses throughout Palm Beach County sometimes more than ten a day.   These practices harm young adults whose ability to protect themselves has been eroded by their addictions and whose parents have placed trust in sober homes and treatment facilities that advertise themselves as places that will heal their children.   When harm is directed to a group of defenseless citizens, it weighs in favor of a significant sentence.   *Cf. United States v. Lichtman*, ___ F. App'x ___, 2017 WL 1192199, *5 (11th Cir. Mar. 31, 2017).

Mrs. Chatman may argue that those harms were attributable to persons involved in kickbacks, bribes, criminally insufficient treatment, fraudulent lab testing, etc., rather than the mere offense of using a nominee owner.   However, the state and federal statutory and regulatory schemes that have been enacted to protect patients cannot work if agencies don't have the accurate information they need to vet, inspect, and grant or deny licenses to the true owners and operators of clinics.   A significant sentence is needed to show that lying to regulators in situations like this is a serious offense that has serious consequences.

### 4.   Need to Afford Adequate Deterrence

The need to afford adequate deterrence also weighs in favor of a significant sentence.   The Chatmans made several million dollars from their fraudulent billing of insurance companies. Fraud schemes, in particular, lend themselves to potential defendants conducting a "cost-benefit analysis" and, hence, to general deterrence.   If a defendant knows that he can make multi-millions in exchange for a risk of spending only a short time in prison, then the cost-benefit analysis weighs in favor of committing the fraud.   Health care fraud in general, and health care fraud that

11

endangers the lives of patients in particular, must be deterred through the imposition of adequate prison terms.

According to the Eleventh Circuit, "general deterrence is an important factor in white collar cases, where the motivation is greed . . . we have set aside sentences of little or no imprisonment because they do not constitute just punishment for the offense, do not promote respect for the law, and will not do much to deter similar criminal activity by others."   *United States v. Hayes*, 762 F.3d 1300, 1308 (11th Cir. 2014).   A light sentence conveys the message that "would-be white-collar criminals stand to lose little more than a portion of their ill-gotten gains and practically none of their liberty," and accordingly do not constitute just punishment or promote respect for the law. *Id.* at 1310-11.

The Eleventh Circuit also found a sentence of time-served unreasonable in a health care fraud case because the defendant:

> did not receive so much as a slap on the wrist – it was more like a soft pat.  . . . Such a sentence fails to achieve an important goal of sentencing in a white collar crime prosecution – the need for general deterrence.  . . .
>
> Insurance companies must rely on the honesty and integrity of medical practitioners in making diagnoses and billing for their services.   And as the government indicated at oral argument, deterrence is an important factor in the sentencing calculus because health care fraud is so rampant that the government lacks the resources to reach it all.   Thus, when the government obtains a conviction in a health care fraud prosecution, one of the primary objectives of the sentence is to send a message to other health care providers that billing fraud is a serious crime that carries with it a correspondingly serious punishment.
>
> . . . Kuhlman's sentence sends the opposite message—it encourages rather than discourages health care providers from engaging in the commission of health care fraud because they might conclude that the only penalties they will face if they are caught are disgorgement and community service.

*United States v. Kuhlman*, 711 F.3d 1321 (11th Cir. 2013).

Again, Chatman may argue that she was not involved in the more egregious aspects of the charged health care fraud scheme.   While true, Mrs. Chatman's limited involvement has placed her sentence in the range of four years versus the life sentence that the Probation Office has calculated for her husband.   The Court needs to deter others from "merely going along" and serving as "nominee owners."

**5.   The Need to Protect the Public**

It is unlikely that Mrs. Chatman will return to a life of crime, so this factor weighs against a lengthy prison term.

**6.   Pertinent Policy Statements**

Pursuant to 18 U.S.C. § 3553(a)(5), the Court must consider "pertinent policy statements" issued by the Sentencing Commission.   Some of those pertinent policy statements appear at U.S.S.G. §§ 5K2.1, 5K2.2, 5K2.3, and 5K2.14.   The United States is not seeking an upward departure pursuant to any of these guideline sections.   Rather, pursuant to § 3553(a)(5), the United States notes that Chatman's criminal conduct encompasses a number of the Commission's policy statements in support of a significant period of incarceration.

The remaining factors are neutral, and the combination of the factors above, on balance, suggest that a term of imprisonment at the low end of the advisory guideline range is required to take into account the true nature of the crime and this defendant.

Respectfully submitted,

BENJAMIN G. GREENBERG
ACTING UNITED STATES ATTORNEY

By:  s/*A. Marie Villafaña*

A. MARIE VILLAFAÑA
Assistant United States Attorney
Florida Bar No. 0018255
500 South Australian Avenue, Suite 400
West Palm Beach, FL 33401
Telephone: 561 820-8711
Facsimile: 561 820-8777
ann.marie.c.villafana@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 12, 2017, I electronically filed the foregoing document with the Clerk of the Court and served the document via CM/ECF.

s/ *A. Marie Villafaña*

A. MARIE VILLAFAÑA
Assistant United States Attorney