UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.   17-80013-CR-MIDDLEBROOKS/BRANNON

UNITED STATES OF AMERICA

v.

JOAQUIN MENDEZ,

    Defendant.
_____/

## RESPONSE TO DEFENDANT'S OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT

The United States of America, by and through the undersigned Assistant United States Attorney, hereby files this Response to Defendant Joaquin Mendez's Objections to the Presentence Investigation Report ("PSI"), which are noted in the Probation Officer's Addendum to the PSI. The factual objections were resolved via the Probation Officer's Addendum, but two legal objections remain in dispute, namely: (1) whether the Probation Office properly applied the 'vulnerable victim' sentencing enhancement; and (2) whether the Probation Office properly applied the death or serious bodily injury sentencing enhancement.  For the reasons set forth below, the enhancements were properly applied.

### Vulnerable Victim Enhancement

Defendant Mendez served as the medical director of Reflections Treatment Center, a substance abuse treatment facility in Margate, Florida.  The defendant signed paperwork acknowledging that he was the medical director, which allowed Kenneth and Laura Chatman to obtain a license to open Reflections.   The Chatmans then hired a second doctor to serve as medical director and then returned to defendant Mendez when the other doctor quit.   Defendant Mendez

actively worked as Reflections' medical director from September 2014 to September 2015. Defendant Mendez received a salary from Reflections, and also separately billed insurance companies for his examinations of Reflections' patients. All Reflections patients were examined by defendant Mendez so that he could write them prescriptions for bodily fluid testing. The examinations and bodily fluid testing resulted in claims filed with the patients' insurance companies and bills sent to patients and their families asserting that co-pays and deductibles were owed. As the prescribing physician, defendant Mendez also was required to review the results of the lab testing and to use his medical training and judgment to treat his patients based upon the results of the tests that he ordered.

As Dr. Barry Gregory, Reflections' Clinical Director, has admitted, those lab tests showed that as many as 90% of Reflections' patients were continuing to abuse controlled substances while purportedly being "treated" by Reflections and defendant Mendez. Even a cursory review of a few lab tests would have alerted the defendant to this. But, as Dr. Gregory admitted, the lab tests were "useless" because they were not used by anyone, including the prescribing physician, Mendez, to direct treatment, i.e., to help the patients. Mendez himself did not timely review the test results – instead using his review of the tests as a bargaining chip to get Kenneth Chatman to pay his overdue paychecks.

With regard to the vulnerability of the patients, in addition to being addicted to controlled substances, the patients were young – mostly in the 18-to-24 year old range. Many were far from home, having been lured to Florida by promises of top-notch medical and clinical care and illegal kickbacks in the form of free airplane tickets and free rent. Chatman and others at the clinic also cut off communication between the patients and their loved ones by confiscating their phones and

money. Without access to loved ones, and by conditioning their housing on participation in the fraudulent treatment, Chatman and others at the clinic and sober homes made the patients dependent on Chatman – the patients knew they would be homeless and this added to their vulnerability.

Mendez apparently does not challenge the Probation Office's determination that the patients were vulnerable, but challenges the determination that the patients were victims of Mendez. Mendez asserts that the only victims are the insurance companies and they, by definition, cannot be vulnerable.

Although only the insurance companies have come forward with dollar figures monetizing their losses, it is inaccurate to say they were the only victims.[1] The "Manner and Means" section of the Indictment sets forth a number of ways in which Reflections' patients were victimized. Most importantly for purposes of Dr. Mendez's objection, they did not receive medical and clinical services that were intended to help them recover. Recovery meant no more insurance reimbursements. While Dr. Mendez asserts that he was not in charge or clinical services, as the patients' medical doctor, he had a duty to "do no harm" to them and to help them get better. If he had reviewed the expensive drug testing that he ordered and approved, Dr. Mendez would have known that his patients were getting worse, instead of better, at Reflections.

Yesterday, the Eleventh Circuit issued its decision in *United States v. Mathews*, ___ F.3d ___, 2017 WL 4873553 (11th Cir. Oct. 30, 2017), where the Court rejected the exact argument made by Mendez. In *Mathews*, which was a Medicare fraud case, the defendant argued that the

---

[1] Furthermore, one patient's parents have submitted a claim for restitution, which was recognized in Kenneth Chatman's Judgment.

vulnerable victim enhancement should not apply because only the government (Medicare) was a victim, not the patient.

> A "vulnerable victim" is a person "who is a victim of the offense of conviction" or any relevant conduct for which the defendant is accountable, and "who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." [USSG] § 3A1.1 cmt. n.2; *see also United States v. Zats*, 298 F.3d 182, 187 (3d Cir. 2002) ("[V]ictim status is not limited to those hurt by the offense of conviction, but also includes those hurt by relevant conduct outside that offense.").[2]
>
> Here, the district court did not clearly err in determining that the Patient was vulnerable—he was 76 years old and recovering from heart surgery in an intensive care unit. *See id.* Although Martinez argues that he did not "target" the Patient based on his infirmities, § 3A1.1(b) does not require that the defendant "target" the vulnerable victim. *See United States v. Birge*, 830 F.3d 1229, 1231–33 (11th Cir. 2016). Instead, "the vulnerable victim enhancement applies so long as the defendant 'knew or should have known that a victim of the offense was a vulnerable victim.'" *Id.* at 1233 (quoting U.S.S.G. § 3A1.1(b)(1)).
>
> We likewise reject Martinez's argument that the United States was the real and only "victim" of his computer- and records-based crimes. Martinez argues that the Patient is not a "victim" because the government cannot show the Patient suffered any actual harm from his offense conduct. We disagree because there is no requirement under § 3A1.1(b) that a person suffer actual harm in order to be a vulnerable victim of another party's offense conduct. Rather, a person can qualify as a victim if the defendant's offense conduct exposed that person to a risk of actual harm that was reasonably foreseeable, even though actual injury never occurred.

*Id.* at *5-*6. *See also United States v. Moran*, 778 F.3d 942, 978 (11th Cir. 2005) (applying vulnerable victim enhancement for substance abuse treatment patients who were "never treated . . . in a meaningful manner" despite defendants' argument that Medicare was the only victim).

Dr. Mendez's patients were victims of the charged health care fraud scheme. They

---

[2] Although not discussed in *Mathews*, it is worth noting that the Application Note for USSG § 2B1.1, which addresses health care fraud, defines "Victim" as "(A) any person who sustained any part of the actual loss determined under subsection (b)(1); or (B) any individual who sustained bodily injury as a result of the offense."

4

suffered physical and psychological harm by being abused by a facility that was supposed to make them well. Dr. Mendez was the medical director of that facility and a knowing and intentional participant in the scheme. Mendez's patients also suffered pecuniary harm – Dr. Mendez admitted that he "upcoded" claims for the patient examinations that he performed (Factual Proffer, ¶ 22). As explained in connection with the death/serious bodily injury enhancement, some patients also suffered fatal and non-fatal overdoses.

### Death/Serious Bodily Injury Enhancement

The defendant also has objected to the enhancement set forth in USSG § 2B1.1(b)(15), which applies where "the *offense* involved (A) the conscious or reckless risk of death or serious bodily injury." The Eleventh Circuit has found that defendants involved in a scheme where substance abuse patients were not properly treated warrants the risk of death/bodily injury enhancement, even where –unlike here -- no patients actually died or were hurt: "[The clinic] also failed to treat the substance-abuse issues in a meaningful way; dangerous drug relapses plagued much of the improperly treated substance-abusing patient population. By knowingly failing to provide necessary treatment to patients, the appellants placed the patients at risk of death or serious bodily injury. . . . Acknowledging that there was no evidence that any individual died specifically from the treatment at [the clinic], the district court nonetheless applied the increase to defendants . . . based on the evidence of 'admission after admission after admission' that showed the defendants were creating the 'reckless risk' of dangerous outcomes for the patients." *Moran*, *supra*, 778 F.3d at 978.

As noted above, unlike *Moran*, there is evidence that Reflections patients suffered fatal and non-fatal overdoses. Mendez admitted in his factual proffer that he: "signed off on hundreds of

certificates of medical necessity for urine and saliva testing after the testing had actually been done, and in some cases, after the patients had been discharged from Reflections.  Mendez electronically signed these tests stating there was medical necessity despite not reviewing the results.  If Mendez had closely monitored the drug test results, he would have realized that most of the patients at Reflections were continuing to abuse drugs.  Mendez did not use the results of any of the lab testing in order to direct the treatment of the patients." (Factual Proffer at ¶ 23).

## CONCLUSION

For the foregoing reasons, the defendant's legal objections to the Pre-Sentence Investigation Report should be overruled.

Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

By: *s/A. Marie Villafaña*
A. MARIE VILLAFAÑA
Assistant United States Attorney
Florida Bar No. 0018255
500 South Australian Avenue, Suite 400
West Palm Beach, FL 33401
Telephone: 561 820-8711
Facsimile: 561 820-8777
ann.marie.c.villafana@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 31, 2017, I electronically filed the foregoing document with the Clerk of the Court and served the document via CM/ECF.

*s/A. Marie Villafaña*
A. MARIE VILLAFAÑA
Assistant United States Attorney